**VILLAGE OF GATES MILLS, Appellee,**

v.

**WELSH, Appellant.**

[Cite as *Gates Mills v. Welsh* (2001), 146 Ohio App.3d 368.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 78740.

Decided Oct. 22, 2001.

*Daniel W. Taylor*, for appellee.

*Carr, Feneli & Carbone Co., Leonard F. Carr* and *L. Bryan Carr*, for appellant.

MICHAEL J. CORRIGAN, Judge.

The Lyndhurst Municipal Court found defendant Edward F. Welsh guilty of failing to control his dog, a minor misdemeanor in violation of R.C. 955.22(C). This appeal raises several procedural and substantive issues for review.

Defendant owns four dogs that are restrained by the use of an invisible electric fence running along the perimeter of his property. The complainant, who lives two houses from defendant, testified that she had been walking on the road in front of defendant's house when defendant's dogs saw her and charged the invisible fence. Three of the dogs stopped at the fence, but a fourth ran through the fence and into the road, coming eight to ten feet away from her, baring its teeth and snarling. The complainant began screaming. Her husband heard the screams, saw one of defendant's dogs in the road, and ran to help her. When the dog saw the husband, it ran back into the yard.

Defendant denied that. the dogs were outside at the time of the incident, although he conceded that a family member might have let the dogs out without his knowledge. He also presented evidence to show that the invisible fence had been in working order at the time, although the evidence also suggested that a working invisible fence would not guarantee that a dog would not cross the fence line. He claimed that complainant refused a police officer's suggestion that she work out any problems with defendant, choosing instead to file a criminal complaint, solely because she carried a grudge against him because he refused to participate in a neighborhood sewer project.

The court found that a dog had crossed through the invisible fence. Applying a strict liability standard, the court found defendant guilty. It did, however, note that defendant made reasonable efforts to confine his dogs and therefore suspended all fines.

## I

The first assignment of error complains that the court erred by permitting the city of Gates Mills to amend the complaint from the originally charged offense under Gates Mills Ordinance 518.01(d), a first degree misdemeanor, to one under R.C. 955.22(C), a minor misdemeanor. Defendant claims that the village did so for the sole purpose of denying him the right to a trial by jury.

Crim.R. 7(D) permits the court to amend a complaint at any time before, during, or after trial, with respect to any defect, imperfection, or omission in form or substance, provided no change is made in the name or identity of the crime charged.

Gates Mills Ordinance 518.01(d) states:

"No owner, keeper or harborer of any dog shall fail at any time to keep it either physically confined or restrained upon the premises of the owner, keeper or harborer by a leash, tether, adequate fence, supervision or secure enclosure to prevent escape, or under reasonable control of some person, except when the dog is lawfully engaged in hunting accompanied by the owner, keeper or harborer."

A violation of Gates Mills Ordinance is a first degree misdemeanor.

R.C. 955.22 states:

"(C) Except when a dog is lawfully engaged in hunting and accompanied by the owner, keeper, harborer, or handler of the dog, no owner, keeper, or harborer of any dog shall fail at any time to do either of the following:

"(1) Keep the dog physically confined or restrained upon the premises of the owner, keeper, or harborer by a leash, tether, adequate fence, supervision, or secure enclosure to prevent escape;

"(2) Keep the dog under the reasonable control of some person."

R.C. 955.99(E)(1) says that a violation of R.C. 955.22(C) is punishable by a fine of not less than $25 or more than $100 on a first offense. Although the statute does not specify a degree for the offense, a $100 limitation on a fine makes a first offense under R.C. 955.22(C) a minor misdemeanor. See R.C. 2929.21(D).

■ Defendant concedes that the language of the two laws is identical, so he must also agree that the identity of the charged offense had not been changed by the amendment. He does, however, complain that the village failed to prove the existence of any "defect, imperfection, or omission in form or substance" that would justify the initial request to amend the complaint. He maintains that the village's only reason for amending the complaint would be to negate the right for a jury trial afforded to persons charged with misdemeanors, as opposed to minor misdemeanor offenses. The village protests defendant's "inappropriate allega-

tions" relative to its motivation for amending the complaint but makes no meaningful argument as to why an amendment was necessary, other than to argue that defendant suffered no prejudice because he conceded that the court could be impartial.

In *Maple Hts. v. Brown* (July 27, 2000), Cuyahoga App. No. 76731, unreported, 2000 WL 1038187, we rejected a similar argument that an amendment from a fourth degree misdemeanor to a minor misdemeanor operated to deprive an accused of the right to a jury trial. Citing R.C. 2945.17 for the proposition that an accused is entitled to be tried by a jury in cases in which the penalty involved exceeds $100, we held that the right to trial essentially follows the degree of offense and that once an offense had been lawfully amended to a minor misdemeanor, no right to a jury trial existed.

This brings us to defendant's next argument—that the court did not lawfully amend the complaint because the village failed to show a defect in the complaint that would justify the court's decision to amend.

The village's decision to make a failure to control a dog a first degree misdemeanor, punishable by up to six months in jail, could be considered unduly harsh under some circumstances, particularly when the offense is a strict liability offense. The village could rationally conclude that the facts of this case did not warrant exposing defendant to the risk of jail as punishment, especially when a lesser punishment would better serve the ends of justice. Viewed in this light, the court could reasonably see the original decision to charge the violation under the village ordinances as a defect or imperfection in the complaint. The first assignment of error is overruled.

## II

The second assignment of error is that the court's judgment of conviction is against the manifest weight of the evidence. Defendant argues that he presented credible evidence showing that the invisible fence was in working order and that his dogs were inside the house at the time of the incident.

Matters of credibility are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. Complainant and her husband both testified that they saw one of defendant's dogs in the road. Their identification of the dog was precise, as defendant owned a distinctive-looking white German Shepard and complainant had seen the dogs on previous occasions.

Defendant maintained both that his invisible fence was in working order and that the dogs were inside his house at the time. Evidence that the invisible fence was working was tempered by other evidence showing that invisible fences were

not foolproof. Likewise, even though defendant said that he did not let his dogs out of the house, he did concede that it was possible that his son or daughter-in-law might have let the dogs out without his knowledge.

Finally, defendant points to evidence showing that complainant pressed charges only because she did not like him and had not spoken to him for several years. While this evidence of animosity might have cast doubt on complainant's credibility, the court also heard evidence from complainant's husband, and his bias was not evident. The court could reasonably doubt that two people would fabricate a complaint, and we cannot say that the court lost its way in finding complainant's version of the facts more credible. The second assignment of error is overruled.

## III

In his third assignment of error, defendant complains that the court erred by finding him guilty of violating a strict liability statute when he did not engage in a voluntary act or omission to perform an act or duty he was capable of performing, and when he took all reasonable precautions and efforts to comply with the statute.

R.C. 955.22(C) does not establish a requisite mental state. In *State v. Collins* (2000), 89 Ohio St.3d 524, 530, 733 N.E.2d 1118, the Supreme Court recently reaffirmed the principle set forth in R.C. 2901.21(B) that "where a statute defining a criminal offense fails to expressly specify a mental culpability element, * * * proof of a violation of the criminal provision requires a showing of recklessness, absent a plain indication in the statute of a legislative purpose to impose strict criminal liability."

R.C. 955.22(C) states that "no owner, keeper, or harborer of any dog shall fail at any time to do either of the following * * *." Ohio courts have said that "when a statute reads 'no person shall' engage in proscribed conduct, absent any reference to a culpable mental state, the statute indicates a legislative intent to impose strict liability." See *State v. Shaffer* (1996), 114 Ohio App.3d 97, 682 N.E.2d 1040; *State v. Cheraso* (1988), 43 Ohio App.3d 221, 540 N.E.2d 326 ("it is well-established that when a statute reads, 'No person shall * * *,' absent any reference to the requisite culpable mental state, the statute is clearly indicative of a legislative intent to impose strict liability").

In *State v. Schlosser* (1997), 79 Ohio St.3d 329, 333, 681 N.E.2d 911, the Supreme Court considered the applicable culpable mental state for violations of R.C. 2923.32(A)(1), Ohio's RICO statute, which did not contain a mental element. The court held that R.C. 2901.21(B) does not apply to statutes that are "*mala prohibita, i.e.,* the acts are made unlawful for the good of the public welfare

regardless of the state of mind." Hence, the Supreme Court held that the General Assembly intended to impose strict liability for RICO violations despite its failure to include a culpable mental state.

■■ Although R.C. 955.22 does not contain a statement of legislative purpose, we think that the intent behind a statute requiring an owner to control a dog is manifestly intended to protect the public safety and well-being. Cf. *State v. Anderson* (1991), 57 Ohio St.3d 168, 566 N.E.2d 1224 (statute labeling certain dogs as "vicious" is within the police power of the state as it relates to the public health, safety, and welfare). This being the case, the court did not err by finding that R.C. 955.22(C) is a strict liability offense. Because strict liability is applied to a charge under R.C. 955.22(C), the court correctly concluded that defendant's considerable efforts to comply with the statute were irrelevant as a defense. See *Sikora v. Wenzel* (2000), 88 Ohio St.3d 493, 495, 727 N.E.2d 1277.

Both parties cite *Bexley v. Selcer* (1998), 129 Ohio App.3d 72, 716 N.E.2d 1220, a case very similar to this case. Selcer, whose dog crossed the boundry of an invisible fence installed in his lawn, had been charged with violating a Bexley ordinance that stated that "no owner, keeper, or harborer of any dog shall permit it to go beyond the premises of the owner, keeper or harborer unless the dog is on a leash * * *." The court of appeals concluded that the language "shall permit" contained in Bexley Ordinance 618.01(b) required some intentional or negligent act—not strict liability. *Selcer*, 129 Ohio App.3d at 78, 716 N.E.2d 1220.

The section Selcer had been charged under was not the same as R.C. 955.22(C). In fact, the court of appeals specifically mentioned this point, noting:

"Finally, we need not determine whether, as contended by the city, Bexley Codified Ordinances Section 618.01(c) evinces intent of strict liability (based on language that 'no owner * * * of any dog shall *fail* at any time to keep it either physically confined or restrained upon the premises of the owner.'). In the present case, defendant was not charged under that section." (Emphasis *sic.*)

The issue that *Selcer* refused to address is the issue in this case. *Selcer* is not on point.

Defendant also complains that making dog-control statutes strict liability is too harsh, since there is no foolproof or perfect means of restraining a dog. He points to evidence in the record showing that a number of dog owners have had dogs run off after breaking leashes or other restraints. This, defendant reasons, means that guilt should not attach if the dog owner took reasonable precautions to control the dog.

While we might agree that a culpable mental state of either "recklessly" or "negligently" might more accurately fit the intent behind either the ordinance or

the statute, it is not our place to rewrite statutes and ordinances. This is a matter for the village council or the General Assembly. Hence, while we are sympathetic to defendant's argument that he made more than reasonable efforts to control his dogs, we nonetheless agree that the court properly considered defendant's effort to fence his dogs as part of mitigation of sentence, not guilt. The third assignment of error is overruled.

## IV

The fourth assignment of error complains that the Gates Mills ordinances are inherently, and hopelessly, conflicting. Defendant maintains that the ordinances prohibit front yard fences greater than four feet in height (a height, he insists, that is not high enough to contain a large dog), and no higher than six feet in back yards. He claims that these ordinances conflict with Gates Mills Ordinance 1163(g), which prohibits fences that unduly interfere with the migration of wildlife. Defendant thus concludes that an invisible fence is the only means available to fence in a dog while not impeding the migration of wildlife.

The flaw with defendant's argument is his failure to recognize that a fence is not the sole means available to restrain a dog. R.C. 955.22(C) requires a dog only to be physically confined or restrained. There are a number of ways to confine or restrain a dog, a fence being only one such way of doing so. We understand that no method is entirely foolproof—that is a factor a person must consider when contemplating dog ownership. Defendant just happened to have the misfortune of living near a person who had little patience for him and even less patience for his dogs. Nothing that happened here strikes us as being criminal in nature, but the decision to press charges is not ours to make.

As for the argument that a fence would impede migration of wildlife, we see no evidence in the record to suggest what wildlife would be impeded had defendant erected a six-foot-high fence. There was some testimony to show that a deer ran through defendant's back yard while a technician tested the invisible fence, but we do not consider a single deer to rise to the level of migrating wildlife. And in any case, Gates Mills Ordinance 1163(g) states that no fence shall "unduly" interfere with the migration of wildlife. The use of the word "unduly" suggests that the interference must be extraordinary, and we see nothing here to suggest that an ordinary fence would run afoul of the ordinance. The fifth assignment of error is overruled.

*Judgment affirmed.*

KARPINSKI, A.J., and BLACKMON, J., concur.