City of AKRON, Appellee,

v.

MEISSNER, Appellant.

[Cite as *Akron v. Meissner* (1993), 92 Ohio App.3d 1.]

Court of Appeals of Ohio,
Summit County.

No. 16187.

Decided Dec. 22, 1993.

*Gerald K. Larson,* Assistant City Prosecuting Attorney, for appellee.

*Susan Ragsdale,* for appellant.

---

BAIRD, Judge.

This cause comes before the court upon the appeal of Sonya Meissner from a decision in the Municipal Court of Akron finding her guilty of failing to control her dog, in violation of Akron City Code ("A.C.C.") 92.25(B)(1) and 92.25(B)(4). The court sentenced the appellant to fines, court costs, and a jail sentence, and her dog was ordered to be destroyed. It suspended part of the fines and all the jail time. The dog's destruction is stayed pending this appeal. We reverse.

On November 15, 1992, Officer Donald Miller issued to the appellant an unsworn complaint and summons charging her with one count of permitting her dog to be at large (A.C.C. 92.25[B][1]) and one count of permitting her dog to bite (A.C.C. 92.25[B][4]). The next day, Officer Miller filed a sworn complaint charging the appellant with violating A.C.C. 92.25(B)(4) only.

The trial court tried the appellant on both counts. The prosecution produced evidence that the appellant's dog was at large and did bite another dog, while the appellant offered no evidence. The trial court entered a guilty verdict on both counts, from which the appellant appeals, asserting two assignments of error. Because the second assignment of error is procedural and the first substantive, this court treats them in reverse order.

## Assignment of Error II

"The City of Akron failed to properly execute the complaint in violation of Criminal Rule 3. The complaint is void and any conviction resulting therefrom is void. Thus, Defendant was denied due process of law under the Fourteenth Amendment to the United States Constitution and Article 1, Section 10 of the Ohio Constitution."

Crim.R. 3 requires, in part, that a complaint be "made upon oath." Normally, under Crim.R. 4(A)(1), a summons will issue from the sworn complaint, in that order. Crim.R. 4(A)(3), however, provides that "[i]n misdemeanor cases where a law enforcement officer is empowered to arrest without a warrant, he may issue a summons * * *. The officer issuing such summons shall file * * * a complaint describing the offense." In addition, for minor misdemeanors, Crim.R. 4.1 allows another choice of procedure. An officer complying with that rule may issue a copy of a citation to the accused and then, without unnecessary delay, file a sworn original with the court.

In this case, the officer issued to the appellant an unsworn copy of a "citation and summons" charging her with both A.C.C. 92.25(B)(1), which is a minor misdemeanor, and A.C.C. 92.25(B)(4), which is a first degree misdemeanor. He never filed a sworn original. Instead, he filed a sworn complaint charging the first degree misdemeanor only.

The city never properly charged the appellant with a violation of A.C.C. 92.25(B)(1). Therefore, the court never acquired jurisdiction over that issue. "In the absence of a sufficient formal accusation, a court acquires no jurisdiction whatever, and if it assumes jurisdiction, a trial and conviction are a nullity." *State v. Miller* (1988), 47 Ohio App.3d 113, 114, 547 N.E.2d 399, 400. See, also, *Stewart v. State* (1932), 41 Ohio App. 351, 353–354, 181 N.E. 111, 111–112. In *State v. Green* (1988), 48 Ohio App.3d 121, 548 N.E.2d 334, the charging officer signed the complaint, but did not sign the jurat. The court held that an unsworn complaint "is void and any conviction resulting therefrom would be void also." *Id.* at 122, 548 N.E.2d at 335.

Since the charging officer did not file a sworn original charging the appellant with the dog-at-large violation, in accordance with Crim.R. 4.1, that conviction is void. Only the dog bite charge remains. That charge falls within the process outlined in Crim.R. 4(A)(3), in which an officer may issue the summons before filing the sworn complaint.

The appellant's second assignment of error is well taken as to the Section 92.25(B)(1) count, but not as to the Section 92.25(B)(4) count. Accordingly, on procedural grounds, this court reverses her conviction for permitting the dog to be at large. We now evaluate, on substantive grounds, her conviction for permitting the dog to bite.

### Assignment of Error I

"There was insufficient evidence as a matter of law to prove any element of intent under the Akron City Ordinance titled Control of Dogs. Thus, the convictions violate A.C.O. [*sic*] 130.07(A), and due process of law under the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution."

A.C.C. 92.25(B)(4) provides:

"No person owning * * * or having the * * * control of a dog shall suffer or permit such dog to:

" * * *

"(4) Bite or otherwise cause physical harm to any * * * domestic animal * * * while the dog is off the premises of the owner, or while on premises which are not exclusively controlled by the owner."

4

This section must be read together with sections of the Akron City Code governing criminal liability. Specifically, before a defendant may be convicted of this or any criminal offense, A.C.C. 130.07 requires proof of voluntary conduct or omission and proof of the appropriate mental state.

 Under A.C.C. 130.07(A)(1), "a person is not guilty of an offense unless * * * [h]is liability is based on conduct which includes either a voluntary act, or an omission to perform an act or duty which he is capable of performing[.]" As applied to A.C.C. 92.25(B)(4), the prosecution must prove that the defendant did "suffer or permit" the dog to bite. Webster's Third New International Dictionary (1961) initially defines "permit" as follows: "to consent to expressly or formally * * *;" other definitions include "to make possible" and "to give an opportunity." Id. at 1683. The same authority defines "suffer" as a synonym for "permit" and as "not to forbid or hinder." Id. at 2284. All of these definitions connote some affirmative act or omission. Since A.C.C. 130.05(A) provides that sections defining offenses shall be strictly construed against the prosecution and liberally construed in favor of the accused, "permit" and "suffer" must be construed to require an affirmative act or omission.

 A.C.C. 130.07(A)(2) requires that the prosecution also prove the "requisite degree of culpability for each element" of the crime, except as provided in subsection (B), which provides: "When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense. * * *." Further, if a mental state is not specified and there is no indication of council's purpose to impose strict liability, then "recklessness is sufficient culpability to commit the offense." A.C.C. 130.07(B).

A.C.C. 92.25 neither sets forth any of the statutory degrees of culpability listed in A.C.C. 130.08 (purposely, knowingly, recklessly, negligently), nor does it plainly indicate a purpose to impose strict criminal liability.[1] As alluded to above, the words "suffer or permit" connote some awareness of one's actions and the consequences of those actions. It is noteworthy that the comparable civil liability section of the Ohio Revised Code imposes strict liability, using the phrase "the owner * * * is liable in damages for any injury, death, or loss * * * caused by the dog." R.C. 955.28(B). The Akron City Council had words at its disposal to indicate a purpose to impose strict liability. It chose not to use those words.

---

1. While A.C.C. 92.25(C) does provide that lack of intent or knowledge is not a defense, it must be noted that "recklessly" and "negligently" are not mentioned therein.

Since no specific mental state is explicit in Section 92.25(B), nor is there clearly a purpose to impose strict liability, "recklessly" is sufficient culpability to convict. With no evidence of recklessly permitting her dog to bite, the trial court wrongly convicted the appellant. Therefore, the appellant's conviction under A.C.C. 92.25(B)(4) is reversed.

*Judgment reversed.*

COOK, P.J., concurs.

REECE, J., dissents.

REECE, Judge, dissenting.

I would affirm both convictions.

First, an amplification of the facts is in order. On November 14, 1992, Meissner's German Shepherd dog, running at large, chased a smaller dog down a public street until the Shepherd grabbed, bit repeatedly, shook and ultimately killed the smaller dog. The owner of the small dog had to use a baseball bat to finally chase off the Shepherd.

The Shepherd was then followed to Meissner's house where it was let into the house by Meissner, who verified that it was her dog.

In Assignment of Error II, Meissner argues that there was not a valid complaint under Crim.R. 3, charging the minor misdemeanor of permitting the Shepherd to run at large. In the first place, Crim.R. 3 is not applicable. Crim.R. 4.1 specifically deals with minor misdemeanors and starts out with the language, "[N]otwithstanding Rule 3 * * *." Crim.R. 4.1(D) is the section to be examined in this case.

The Ohio Supreme Court seems to have come to a different conclusion than the majority opinion on the interpretation of Crim.R. 4.1(D). In *State v. Slatter* (1981), 66 Ohio St.2d 452, 457, 20 O.O.3d 383, 386, 423 N.E.2d 100, 103, the Supreme Court analyzed Crim.R. 4.1 as a whole, including subsection (D) as follows:

"Subdivision (D) *requires signing of the citation by the issuing officer* and delivery to the court." (Emphasis added).

Conspicuously absent is a requirement that the minor misdemeanor *citation* be sworn to. This seems to me to support the procedure followed by the officer in this case and the decision by the trial court.

The three cases cited by the majority in support of its position are inapplicable. *State v. Miller, supra,* dealt with a complaint and affidavit (not a citation) charging a misdemeanor theft under R.C. 2913.02. All that court said was that

there is an absence of a sufficient formal accusation when the complaint and affidavit are not even signed. *Stewart v. State, supra,* is a 1932 case, well predating citations in Ohio, which held that there could be no felony convictions except on indictments, bills of information not existing at that time. *State v. Green, supra,* involved various misdemeanor charges and was decided on Crim.R. 3.

As to the more serious first degree misdemeanor covered in Assignment of Error I, I believe that not only does the language of the ordinance express the plain purpose of the city council to impose strict liability, but the words "suffer" and "permit," to use an illustrative verb, permit meanings indicative of passive, not active, circumstances.

Akron City Code 92.25 is a strict liability offense. To find otherwise would put Section 92.25(B) in conflict with Section 92.25(C)(3), which provides: "Lack of intent or knowledge is not a defense to a violation of this section." In addition, the nature of the offense plainly indicates City Council's purpose to impose strict liability.

Principles of statutory construction require that courts interpret statutes to reflect a consistent legislative intent. "It is a primary rule of statutory construction that courts should not construe one statute in a way that would abrogate, defeat, or nullify another statute, where a reasonable construction of both is possible." *San Diego v. Elavsky* (1979), 58 Ohio St.2d 81, 86, 12 O.O.3d 88, 91, 388 N.E.2d 1229, 1232. When finding legislative intent, courts must "avoid absurd and grotesque results" wherever possible. *State v. Nickles* (1953), 159 Ohio St. 353, 50 O.O. 322, 112 N.E.2d 531, paragraph one of the syllabus.

It would be inconsistent for City Council to require the prosecution to prove a culpable mental state in its prima facie case, under Section 92.25(B), and then to disallow a lack of intent or knowledge as a defense under Section 92.25(C)(3). A consistent reading of A.C.C. 92.25 as a whole plainly indicates City Council's purpose to impose strict criminal liability.

The nature of the offense also indicates a purpose to impose strict liability. In *State v. Buehler Food Markets* (1989), 50 Ohio App.3d 29, 31, 552 N.E.2d 680, 683, this court found that "where the purpose of the statute is to protect the victim * * * regardless of the mental state of the defendant; where it would be almost impossible to prove guilty knowledge; where the defendant has the sole opportunity to guard against the forbidden conduct and ascertain the true facts; where there exists a serious and substantial harm to the public from such conduct; where the offense is one of the eight categories of offenses amenable to strict liability; and where the offense belongs to the *mala prohibita* class of offenses which are not inherently wrong in and of themselves unless designated

as wrong by the legislature, the conclusion that the legislature intended to impose strict liability is supported."[2]

A.C.C. 92.25 is similar in these respects to the statute then under consideration, R.C. 1327.61(B).

A.C.C. 130.07(B) relieves the prosecution of any burden to produce evidence of intent under these circumstances: "When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense. * * *" Since the prosecution proved that the appellant owns the dog described in the complaint and that her dog bit another dog, there was sufficient evidence to convict her under A.C.C. 92.25(B)(4).

Additionally, another dictionary definition for "permit" is "to give opportunity for" and for "suffer" is "to let happen." Neither of these definitions requires that a person actively and recklessly do something which results in her dog biting. Providing an opportunity for or letting something happen connotes passivity to me.

Over and above all of this, it seems to me that a trier of fact could reasonably infer that on the fourteenth of November, at 7:45 pm, in Akron, Ohio, a homeowner does not leave her door open, thus even passively letting her dog roam out to bite, unless dogs are now opening doors. This inference is buttressed by the fact that Meissner later actively opened her door to let her dog in after the biting. I believe it could be inferred that she opened the door to let this dangerous dog out. This recklessness, or at least permitting or suffering, should satisfy even the majority.

I would affirm.

---

**2.** Sayre, Public Welfare Offenses (1933), 33 Colum.L.Rev. 55, 73, lists the eight categories of offenses amenable to strict liability as:

"(1) Illegal sales of intoxicating liquor;
" * * *
"(2) Sales of impure or adulterated food or drugs;
" * * *
"(3) Sales of misbranded articles;
"(4) Violations of anti-narcotic acts;
"(5) Criminal nuisances;
"(a) annoyances or injuries to the public health, safety, repose or comfort;
" * * *
"(6) Violations of traffic regulations;
"(7) Violations of motor-vehicle laws;
"(8) Violations of general police regulations, passed for the safety, health or well-being of the community."