CITY OF BEXLEY, Appellee,

v.

SELCER, Appellant.

[Cite as *Bexley v. Selcer* (1998), 129 Ohio App.3d 72.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APC08–1118.

Decided July 14, 1998.

*Janet E. Jackson,* Columbus City Attorney, *Stephen L. McIntosh* and *Brenda J. Keltner,* Assistant City Attorneys, for appellee.

*David M. Selcer,* for appellant.

DESHLER, Presiding Judge.

Defendant, Susan J. Selcer, appeals from a judgment of the Franklin County Municipal Court, Environmental Division, finding her guilty of violating Bexley Codified Ordinances 618.01(b), a dog leash ordinance.

The case was tried before the court on August 13, 1997. Wendy Avner testified on behalf of the city. Avner, who resides at 285 South Dawson Street, is a neighbor of the defendant. On May 26, 1997, at approximately 8:18 p.m., Avner and her husband observed a dog on their property. At the time of the incident, Avner's husband videotaped the dog. The dog was not on a leash. At trial, Avner identified the dog as belonging to defendant.

Avner subsequently observed the defendant drive in front of the house in a van and retrieve the dog. Avner testified that on a previous occasion, approximately one year earlier, the dog had been in their garage.

The defendant, who represented herself at trial, acknowledged that the dog belonged to her. The defendant testified that she had taken steps to keep the dog confined. Specifically, defendant had an "invisible fence" installed in September 1996. Defendant also had the dog professionally trained by the K–9 One Training Center.

Defendant testified that, following the incident, she notified the company that installed the invisible fence, and individuals from the company came to the house on two occasions to examine the fence; "[t]hey found a loose wire, which might have shorted out on that day." Defendant further stated that she does not permit the dog "to ever leave my premises without being on a leash."

On cross-examination, defendant testified that her family moved to their home on Dawson Street approximately two years ago. The defendant had two dogs when she first moved into the residence; since that time, there has been tension between her family and the Avner family regarding defendant's dogs. Defendant stated that "[w]e have done everything possible to be very good dog owners. In fact, there is nothing more we can do."

Defendant acknowledged that the dog left her property on one prior occasion when the battery in the animal's collar failed. Defendant switched from a three-month battery plan to a one-month battery plan to avoid further problems.

At trial, the city contended that the ordinance at issue required "no culpable mental state" and thus imposed strict liability. Alternatively, the city argued that, because defendant was aware that the dog had left her property on a prior occasion, she had acted recklessly in failing to keep the dog on her premises.

Following the presentation of evidence, the trial judge stated, "I do not find in any regard this is intentional, a knowing or purposeful act." The court concluded, however, that defendant had violated the ordinance "based upon the evidence that there was a prior failure of the invisible fence" and that defendant "knew there was a risk it might fail." Defendant was fined $25 by the court.

On appeal, defendant sets forth the following five assignments of error for review:

"ASSIGNMENT OF ERROR NO. 1

"The court erred by failing to consider the Bexley Ordinance 618.01(b) to be a 'running-at-large' ordinance to which Ohio's Supreme Court and Appellate Court law concerning running-at-large applies, and instead applied it more as a strict liability statute.

"ASSIGNMENT OF ERROR NO. 2

"The court abused its discretion by finding that appellate [sic] permitted her dog to go beyond her premises.

"ASSIGNMENT OF ERROR NO. 3

"The court erred by applying the 'more probable than not' burden of proof to convict the appellant rather than the 'beyond a reasonable doubt' burden required in criminal cases.

"ASSIGNMENT OF ERROR NO. 4

"The court erred in finding that appellant's electronic fence had failed in the past, when there was not a scintilla of evidence to that effect.

"ASSIGNMENT OF ERROR NO. 5

"The court abused its discretion by failing to recognize that the previous incident where the dog left appellant's premises had occurred because the battery strapped around the dog's neck had run down, not because the fence itself failed, and that keeping a fresh battery was just a matter of proper maintenance to be expected with an invisible fence."

Defendant's first, second, and fourth assignments of error are interrelated and will be addressed jointly.

Bexley Codified Ordinances 618.01 provides in relevant part:

"618.01 DOGS AND OTHER ANIMALS RUNNING AT LARGE.

"(a) No person who is the owner or keeper of any animal shall permit it to run at large upon any public property, including, without limitation, sidewalks and streets, or upon the premises of another.

"(b) No owner, keeper or harborer of any dog shall permit it to go beyond the premises of the owner, keeper or harborer unless the dog is on a leash, cord or tether of not more than six feet in length, which is controlled by a person of such age, size and discretion that he is capable of preventing the dog from approaching any person or other animal in a menacing fashion.

"(c) No owner, keeper or harborer of any dog shall fail at any time to keep it either physically confined or restrained upon the premises of the owner, keeper or harborer by a leash, tether, adequate fence, or secure enclosure to prevent escape, or under reasonable control of a person of such age, size and discretion that he is capable of preventing the dog from approaching any person or other animal in a menacing fashion.

"(d) The running at large of any such animal in or upon any of the places mentioned in this section is prima-facie evidence that it is running at large in violation of this section."

Defendant argues that a conviction under Section 618.01(b) of the ordinance requires proof that the owner of a dog "permit[ted]" the dog to be off the owner's premises. Defendant maintains that in the instant case, she presented evidence

indicating that the dog was fenced and that the animal left defendant's premises through no fault of hers. Defendant asserts that the trial court, in finding that defendant "permitted it to go beyond the premises * * * based on the fact there was a failure in the past of the invisible fence," failed to give a plain meaning interpretation to the word "permit"; rather, defendant contends, the trial court grafted a strict liability provision onto the ordinance.

The city argues that the trial court did not construe the ordinance as imposing strict liability; instead, it is contended, while the city requested at trial a finding that the ordinance imposed strict liability, statements by the trial court "clearly indicate that it found the requisite mental element of recklessness by reference to the earlier failure of the electronic fence system." The city further asserts that it is "arguable" that strict liability was intended by language in Section 618.01(c) of the ordinance.

We will first consider the city's contention that the court's decision was predicated on a finding of recklessness. Although asserting at trial that the ordinance imposed strict liability, the city further argued that the evidence indicated that defendant acted recklessly and that recklessness was applicable based upon R.C. 2901.21.

R.C. 2901.21(B) states:

"When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."

We note that the trial court, in concluding that defendant violated Bexley Codified Ordinances 618.01(b), never explicitly made a finding that defendant acted recklessly. The court, however, while stating that there was no evidence that "this is intentional, a knowing or purposeful act," did find, based on a prior failure of the invisible fence, that "there was a risk that the invisible fence might not work."

The practical effect of the trial court's ruling, as argued by defendant, appears to be that, because there was a possibility that the fence could fail and defendant knew of that possibility, defendant would be found strictly liable for the dog leaving defendant's premises. Assuming, however, that the court's ruling was based on a finding of recklessness (and further assuming that recklessness is an element of the offense), we find that the evidence was insufficient, as a matter of law, to support such a finding.

R.C. 2901.22(C) states that a person acts recklessly when "with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

 " 'A person is said to be reckless under the section when, without caring about the consequences, he obstinately disregards a known and significant possibility that his conduct is likely to cause a certain result or be of a certain nature, or that certain circumstances are likely to exist.' " *State v. Pack* (1996), 110 Ohio App.3d 632, 636, 674 N.E.2d 1263, 1265, quoting the Legislative Service Commission Comment to R.C. 2901.22.

 In the present case, the evidence indicates that, while the dog had left the premises on one occasion because the battery on the dog's collar failed, defendant subsequently acted to address the problem by switching to a plan under which the battery was to be replaced each month rather than every three months. The evidence also shows that, after the dog left the defendant's premises on May 26, 1997, defendant made an immediate effort to retrieve the animal after being notified that the dog was missing. Following that incident, defendant contacted the company that installed the invisible fence and a loose wire was discovered. Defendant further testified that she never allows the dog to leave the premises without being on a leash.

Upon review, we conclude that the evidence presented by the prosecution was, as a matter of law, insufficient to prove that defendant acted recklessly. While there existed a possibility that the fence might fail (and in fact it apparently did fail on the day of the incident), we cannot conclude, in light of the evidence regarding precautions taken by defendant, that defendant acted with conscious disregard of the consequences or that the risk was so significant to indicate recklessness (or even negligence) on her part.

 Accordingly, the remaining issue is whether the ordinance at issue imposes strict liability and thus requires no proof of culpability to sustain a conviction. Specifically at issue is the meaning of the phrase "to permit."

The word "permit" is defined as "[t]o suffer, allow, consent, let; to give leave or license; to acquiesce, by failure to prevent, or to expressly assent or agree to the doing of an act." Black's Law Dictionary (5 Ed.Rev.1979) 1026. Other Ohio courts have held that this definition "connote[s] some affirmative act or omission." *Akron v. Meissner* (1993), 92 Ohio App.3d 1, 4, 633 N.E.2d 1201, 1203.

Further, Section 618(d) of the ordinance states that "[t]he running at large of any such animal in or upon any of the places mentioned in this section is prima-

facie evidence that it is running at large in violation of this section." In *Young v. Ohio State Agricultural Research & Dev. Ctr.* (Sept. 19, 1978), Franklin App. No. 78AP–256, unreported, this court considered the issue whether R.C. 951.02, providing that "[n]o person, who is the owner or keeper of horses, mules, cattle, sheep, goats, swine, or geese, shall permit them to run at large," was a strict liability statute. That statute also provided, as does the ordinance in the instant case, that "[t]he running at large of any such animal in or upon any of the places mentioned in this section is prima-facie evidence that it is running at large in violation of this section."

In *Young,* this court held:

"R.C. 951.02 does not impose strict liability upon the owner of an animal to a traveler upon the highway merely because the animal is at large upon such highway. R.C. 951.02 specifically provides that 'the running at large of any such animal * * * is *prima facie* evidence that it is running at large in violation of this section.' This indicates that the mere running at large of the animal does not in and of itself establish a violation of the statute, but it is necessary under the statute to prove that the owner permitted the animal to run at large. Of course, an owner may permit an animal to run at large either by an intentional act or a negligent act." *Young, supra,* at 4–5. See, also, *Burnett v. Rice* (1988), 39 Ohio St.3d 44, 46, 529 N.E.2d 203, 205–206 (imposition of strict liability under R.C. 951.02 "would conflict directly with the plain language" of the statute providing that a violation of that section is only *prima facie* evidence of an offense; such language "creates a rebuttable presumption of negligence when an animal is at large").

In construing the language of the ordinance at issue, we conclude that the phrase "to permit," in conjunction with the language of Section 618.01(d), requires proof that the owner "permitted" the dog to go beyond the premises of the owner, *i.e.,* by an intentional or negligent act. *Young, supra.* In the present case, there was no evidence presented indicating that defendant acquiesced in the dog's leaving the premises. We note that a similar Columbus ordinance, Columbus City Code ("C.C.") 2327.11, specifically provides that "[s]trict liability is intended to be imposed for a violation of this section." C.C. 2327.11(E). In contrast, while the drafters of the Bexley ordinance could have included similar language, no such intent is set forth in the Bexley ordinance.

Finally, we need not determine whether, as contended by the city, Bexley Codified Ordinances 618.01(c) evinces intent of strict liability (based on language that "[n]o owner * * * of any dog shall *fail* at any time to keep it either physically confined or restrained upon the premises of the owner"). In the present case, defendant was not charged under that section.

Accordingly, because the ordinance at issue does not impose strict liability, and finding no evidence of recklessness, we reverse defendant's conviction and fine for violating Bexley Codified Ordinances 618.01(b). Based upon the foregoing, defendant's first, second, and fourth assignments of error are sustained, the third and fifth assignments of error are rendered moot, the judgment of the trial court is reversed, and this matter is remanded to the trial court for further proceedings in accordance with law and consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

TYACK and JOHN C. YOUNG, JJ., concur.