[Cite as *State v. Finfrock*, 196 Ohio App.3d 249, 2011-Ohio-3862.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| THE STATE OF OHIO, | : | |
| | : | Appellate Case No. 24404 |
| Appellee, | : | |
| | : | Trial Court Case No. 10-TRD-15617 |
| v. | : | |
| | : | |
| FINFROCK, | : | (Criminal Appeal from |
| | : | Dayton Municipal Court) |
| Appellant. | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 5th day of August, 2011.

. . . . . . . . . . .

John Danish, Dayton Law Director, Stephanie L. Cook, Chief Prosecuting Attorney, and Ebony N. Wreh, Assistant Prosecuting Attorney, for appellee.

D. K. Rudy Wehner, Montgomery County Public Defender, and Dennis L. Bailey, Assistant Public Defender, for appellant.

. . . . . . . . . . . . .

FAIN, Judge.

{¶ 1} Defendant-appellant, Debra Finfrock, appeals from her conviction and sentence for wrongful entrustment following a bench trial. Finfrock contends that her conviction should be reversed because it is based on legally insufficient evidence as a matter of law.

{¶ 2} We conclude that the conviction is based on legally sufficient evidence. The

only disputed issue was whether Finfrock permitted an admittedly unlicensed driver to use her vehicle. The definition of "permit" and the case law relied upon by Finfrock stress that a defendant can be culpable through affirmative acts, by omission, or by failing to prevent the doing of an act. Despite knowing that her son, Scott, had illegally driven her car on a number of occasions, and despite being aware of the danger that his driving could pose, Finfrock left her car keys on the table, where Scott could easily retrieve them and drive the car. Finfrock's repeated failures to prevent her son from driving her car supports a reasonable inference that he had her implicit permission to do so. Accordingly, the judgment of the trial court is affirmed.

I

{¶ 3} In September 2010, Dayton Police officers Beane and Saylor were on patrol when they observed a 1996 white Mitsubishi Galant turn onto Gondert Road and accelerate rapidly away from them. When the officers tried to pull the car over, the driver sped away and made a left-hand turn onto Mertland Avenue without signaling. The car took off at a very fast pace for no reason. The officers tried to catch up, but could not, because the car was traveling at such a fast pace. They lost sight of the car, drove around very briefly, and then saw the car again. The car eventually turned onto Mertland Avenue again, where it pulled into a front yard, driving straight into it. The officers were able to see the driver running from the vehicle. He was a white male in his twenties, about six feet tall. The man had brown hair and was wearing a sweatshirt with a distinctive design.

{¶ 4} The officers chased the man to the back yard of the home, but stopped at the fence, because there was a large pit-bull in the back yard. The officers could see most of the

back yard and did not feel that the individual had time to jump the fence. At that time, Officer Saylor went around to the other side of the house. Beane then spoke to Debra Finfrock, who had come out of the house.

{¶ 5} There is some discrepancy about what occurred at this point. Beane stated that he told Finfrock that the driver of the car had just run from them and asked if she knew who was driving the car. Finfrock said that it was her car and that someone named Clint was driving. Finfrock was not able to provide Clint's last name, nor could she say where he was. She said that he was not inside the house. When Beane asked if officers could search the house, Finfrock agreed. Upon entering the house, Beane heard someone at the back door. When he opened the door, Scott Finfrock attempted to come in from the back yard. Beane recognized Scott as someone he had arrested before and who had a history of running from the police. Scott was wearing a grass-stained, white tee shirt and had mud on his pants. It had been raining out, and Scott fit the description of the man they had been chasing, except that he was not wearing the sweatshirt. Officer Beane secured Scott in the police cruiser. The sweatshirt was then found behind a shed in the back yard.

{¶ 6} In contrast, Finfrock testified that she had been in the basement doing laundry and had brought a load upstairs to fold while watching television. At that point, her 12-year-old son heard a thump and asked her what it was. When Finfrock went outside, she saw two or three police cars and also saw her own car sitting partially in the front yard, still running. The police told Finfrock that someone had been driving her car and had run toward the back yard.

{¶ 7} Finfrock walked toward the back yard and hollered for her son, Scott. She did

not know where he was.   The officers asked if they could search the house, and she agreed. At some point, her son, Scott, walked out of the back yard, yelling, "Curtis, where are you? * * * You need to come out.   You were driving." [1]

{¶ 8}   There is no real doubt that Scott Finfrock was the individual driving the car. Debra Finfrock denied giving Scott permission to drive her car, however.   She stated that Scott never had permission to use her car.   He had been in a severe motorcycle accident about a year earlier and had broken every bone in his face and three bones in his back.   He had permanent brain damage and partial blindness in his right eye.   Scott could not drive, and the right side of his face was paralyzed.   Finfrock was aware that Scott's license was suspended; in fact, she stated that he had never had a driver's license.

{¶ 9}   Finfrock admitted that when Scott was involved in the motorcycle accident, he was fleeing from the police.   She stated that even though Scott should not be driving, he drives every chance he gets.   Finfrock also stated that Scott had taken her vehicle a couple of times, including one time in January, when it had to be towed.   There were also times when Scott had taken her car in the middle of the night, when she was asleep.

{¶ 10} Finfrock admitted that officers have warned her that Scott cannot drive her car. On the evening in question, she was very tired, because she had worked a double shift at her job.   She had also been under a great deal of stress due to her son's injuries and problems. Finfrock stated that she had left her car keys on the table after coming home from work.   She indicated that she did not leave her keys on the table purposely, but was very tired and had

---

[1] The testimony appears to have been an attempt to explain Beane's testimony regarding Finfrock's having given someone named "Clint" permission to drive her car.    The suggestion was that the officer confused the name "Clint" with the name "Curtis."    This does not explain Beane's direct recollection of statements that Finfrock made to him about the individual named Clint.

other things on her mind.

{¶ 11} After hearing the evidence, the trial court found Finfrock guilty of wrongful entrustment. The court concluded that Finfrock should have had a heightened awareness that her son would take her keys and drive because he had done it before. The court analogized the situation to leaving a loaded gun in a room where children are playing and concluded that Finfrock had a responsibility to take steps to deter Scott or prevent him from getting behind the wheel of her car. After finding Finfrock guilty, the court sentenced her to 30 days in jail, with 30 days suspended, a $150 fine and court costs, and a driver's license suspension of 30 days. Finfrock appeals from her conviction and sentence.

II

{¶ 12} Finfrock's sole assignment of error is as follows:

{¶ 13} "The judgment of conviction against the defendant-appellant should be reversed because it is based on legally insufficient evidence as a matter of law."

{¶ 14} Under this assignment of error, Finfrock contends that the state failed to prove that she wrongfully entrusted a motor vehicle to an unlicensed person, because the state did not prove that she "permitted" her son, Scott, to drive her motor vehicle. Finfrock argues that "permit" must be construed to require some type of affirmative act or omission. Finfrock also contends that the state failed to prove that she had knowledge that Scott had driven her vehicle.

{¶ 15} "A sufficiency-of-the-evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. *State v. Thompkins* (1997), 78 Ohio St.3d 380,

387. The proper test to apply to the inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks* (1991), 61 Ohio St.3d 259: 'An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Cherry*, 171 Ohio App.3d 375, 2007-Ohio-2133, ¶ 9.

{¶ 16} Finfrock was charged with having violated R.C. 4511.203, which provides:

{¶ 17} "(A) No person shall permit a motor vehicle owned by the person or under the person's control to be driven by another if any of the following apply:

{¶ 18} "(1) The offender knows or has reasonable cause to believe that the other person does not have a valid driver's or commercial driver's license or permit or valid nonresident driving privileges.

{¶ 19} "(2) The offender knows or has reasonable cause to believe that the other person's driver's or commercial driver's license or permit or nonresident operating privileges have been suspended or canceled under Chapter 4510. or any other provision of the Revised Code."

{¶ 20} There is no dispute about Finfrock's knowledge of Scott's lack of a valid driver's license. Finfrock's mental culpability state is not at issue in this appeal. The only issue is whether Finfrock "permitted" Scott to drive her car.

{¶ 21} The parties agree that the word "permit" is not statutorily defined. According

to Finfrock, "permit" has been defined as " '1. To consent to formally * * * 2. To give opportunity for * * * 3. To allow or admit of * * *.' " *Bedford v. Davis,* Cuyahoga App. No. 89049, 2007-Ohio-5949, ¶ 32, quoting Black's Law Dictionary (8th Ed.Rev.2004) 1176. Finfrock further contends that before criminal liability can attach, R.C. 2901.21(A) requires an individual to commit either an overt affirmative act or a failure to act if there is a duty and the person is capable of performing the act. In this regard, Finfrock relies on *Bexley v. Selcer* (1998), 129 Ohio App.3d 72, 77, in which the Tenth District Court of Appeals stated:

{¶ 22} "The word 'permit' is defined as '[t]o suffer, allow, consent, let; to give leave or license; to acquiesce, by failure to prevent, or to expressly assent or agree to the doing of an act.' Black's Law Dictionary (5 Ed.Rev.1979) 1026. Other Ohio courts have held that this definition 'connote[s] some affirmative act or omission.' *Akron v. Meissner* (1993), 92 Ohio App.3d 1, 4, 633 N.E.2d 1201, 1203."

{¶ 23} In *Selcer*, the Tenth District Court of Appeals reversed the defendant's conviction because there was no evidence that the defendant had acquiesced in her dog's leaving the premises. The court noted:

{¶ 24} "In the present case, the evidence indicates that, while the dog had left the premises on one occasion because the battery on the dog's collar failed, defendant subsequently acted to address the problem by switching to a plan under which the battery was to be replaced each month rather than every three months. The evidence also shows that, after the dog left the defendant's premises on May 26, 1997, [the date of the alleged violation], defendant made an immediate effort to retrieve the animal after being notified that the dog was missing. Following that incident, defendant contacted the company that installed the

invisible fence and a loose wire was discovered. Defendant further testified that she never allows the dog to leave the premises without being on a leash." Id., 120 Ohio App.3d at 77.

{¶ 25} Finfrock also relies on *Meissner,* 92 Ohio App.3d at 3, which involved a city ordinance that prohibited owners from suffering or permitting their dogs to bite. The court of appeals concluded that the words " 'suffer or permit' connote some awareness of one's actions and the consequences of those actions." Id. at 4. The court of appeals reversed the conviction, because the prosecution had proven only that the dog was at large and bit someone; it did not prove that the defendant "recklessly" permitted her dog to bite. Id. at 2 and 4.

{¶ 26} Based on these cases and definitions, Finfrock contends that she cannot be found guilty of wrongful entrustment, because there is no evidence that she affirmatively consented to Scott's use of her vehicle.

{¶ 27} We disagree that Finfrock must have committed an overt, affirmative act of consent. The definition of "permit" and the case law relied upon by Finfrock stress that a defendant can be culpable through omission, or by failing to prevent the doing of an act. In the case before us, Finfrock was well aware that Scott had improperly driven her car on a number of occasions. Finfrock had also been warned by the police not to allow this to happen. Yet despite this knowledge and awareness of the danger that Scott's driving could pose, Finfrock left her keys on the table where Scott could easily retrieve them and drive the car. Her excuse was that she was tired and had other things on her mind.

{¶ 28} This conduct fits within the concept, noted by the trial court, that Finfrock should have been aware of her actions and the consequences of those actions. *Meissner*, 92

Ohio App.3d at 4.   The trial court noted that Finfrock had acted irresponsibly by allowing a dangerous situation to be created when she left her keys in a place where they could easily have been used.   In addition, the court observed:

{¶ 29} "Fortunately, there wasn't any serious accident in this case, but that's just luck.  There could have been.   He could have run over someone crossing the street and you're aware of all these possibilities more than anyone else and to leave your car keys is implied that you're permitting it whether you did or not permit it, I think that what you did was a form of permission."

{¶ 30} Essentially, the trial court inferred from Finfrock's repeated failures to prevent her son from driving her car that she had given him her implicit permission to drive it.   We conclude that this was a reasonable inference for the trial court, as the finder of fact, to draw from the evidence in this record.   Accordingly, the judgment of conviction is based on legally sufficient evidence.

{¶ 31} Finfrock's sole assignment of error is overruled.

III

{¶ 32} Finfrock's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

Judgment affirmed.

. . . . . . . . . . . . .

GRADY, P.J., and DONOVAN, J., concur.