[Cite as *State v. McGuire*, 2013-Ohio-3280.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO

     Plaintiff-Appellee

v.

TYRANS L. MCGUIRE

     Defendant-Appellant

Appellate Case No.    25455

Trial Court Case No.   2012-CRB-5551

(Criminal Appeal from
 Municipal Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 26th day of July, 2013.

. . . . . . . . . . .

GARRETT P. BAKER, Atty. Reg. No. 0084416, Assistant City Prosecutor, 335 West Third Street, Room 372, Dayton, Ohio 45402
     Attorney for Plaintiff-Appellee

ALYSIA A. GOSS, Atty. Reg. No. 0086398, and JAMES M. CALHOUN, II, Atty. Reg. No. 90173, Assistant Public Defenders, Law Office of the Public Defender, 117 South Main Street, Suite 400, Dayton, Ohio 45422
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1}    Defendant-Appellant, Tyrans McGuire, appeals from his conviction and sentence on one count of Control of Dogs, a first degree misdemeanor under City of Dayton Revised Code of General Ordinances 91.50(A)(5).  McGuire contends that the trial court erred in overruling his objection to hearsay evidence, and, therefore, violated his Right to Confrontation under the Sixth Amendment of the U.S. Constitution.  McGuire also contends that the judgment of conviction is insufficient as a matter of law.

{¶ 2}    We conclude that the hearsay evidence that was admitted is testimonial, and that the Right to Confrontation applies.  However, McGuire waived this right by introducing hearsay evidence during the direct-examination of a defense witness.  The State was then permitted to use hearsay evidence during cross-examination to clarify the testimony that McGuire had presented.

{¶ 3}    We further conclude that the conviction is supported by sufficient evidence. Accordingly, the judgment of the trial court will be affirmed.


I.  Facts and Course of Proceedings

{¶ 4}    On July 5, 2012, Tonulette Armstrong was walking her dog, Scrappy, down the street near 179 Ardmore Avenue, in Dayton, Ohio.  Scrappy was a small Jack Russell Terrier, was less than a foot tall, and was on a leash.  When Armstrong was parallel to the yard at 179 Ardmore Avenue, and was on the sidewalk, a large grey pit bull slid under or came straight through the fence, and attacked Armstrong and Scrappy.  Armstrong placed Scrappy on the top of her head to keep the pit bull from biting him, but the dog bit Scrappy on the leg, anyway.  The

pit bull also scratched Armstrong and caused her physical injuries.

{¶ 5}   Armstrong had lived in the neighborhood for two years, and had first noticed two pit bulls, including the one who attacked her, in the back yard of the house about six weeks before the attack.   The first time that the pit bulls were brought to the house, they were running loose in the street and were scaring everyone in the neighborhood.   Animal control was called. The dogs were then put on chains to prevent them from running in the street.

{¶ 6}   Prior to the day of the attack, Armstrong had seen the pit bull who attacked her. The dog was chained and was wearing weights on its neck.   She had also seen the defendant, McGuire, feeding the pit bulls and giving them water.   Armstrong stated that she had seen McGuire at the house two or three times within the month before the incident, and had seen other persons coming and going more frequently.   She did indicate that she had also seen McGuire alone with the dogs.

{¶ 7}   At trial, the State presented only Armstrong's testimony.   At the conclusion of the State's case, McGuire asked the trial court to dismiss the case pursuant to Crim.R. 29.   After the court overruled the motion, McGuire presented the testimony of Dayton Police Officer, Chris Smith.   During Smith's testimony, the defense was permitted to elicit hearsay testimony over the State's objection.   Specifically, Smith was permitted to testify that a witness, DeWan Tillman, told him that the residence at 179 North Ardmore was owned by Tillman's father, and that he [Tillman] came to the residence occasionally, even though he and his father lived elsewhere. The defense also attempted to ask Smith several other questions about what Tillman had told him.

{¶ 8}   During cross-examination, the State asked Smith if Tillman had said who

owned the dog. Over objection, Smith was permitted to testify that the dog belonged to McGuire, that McGuire had brought the dog to the house, and that McGuire had been checking on the dog occasionally and feeding it.

{¶ 9} The case was tried as a bench trial, and the court found McGuire guilty. The court imposed a 180-day sentence, which was suspended, other than 20 days, which were to be served on electronic home detention. In addition, the court placed McGuire on three years probation, and precluded McGuire from owning a dog during that time. The sentence was stayed pending appeal.

{¶ 10} McGuire appeals from his conviction and sentence.

II. Did the Trial Court Err in Overruling

the Defendant's Objections to Hearsay Evidence?

{¶ 11} McGuire's First Assignment of Error states as follows:

The Trial Court Erred to the Defendant-Appellant's Prejudice When It Overruled Defendant-Appellant's Objection to Hearsay Testimony, Effectively Denying Defendant-Appellant's Right to Confrontation Under the Sixth Amendment of the United States Constitution.

{¶ 12} Under this assignment of error, McGuire contends that the trial court improperly submitted hearsay testimony about his ownership of the dog, and also violated his right to confront witnesses. In response, the State argues that the evidence is admissible because McGuire "opened the door" to such evidence on direct examination. The State further maintains that McGuire is precluded from raising this matter under the "invited error" doctrine.

**{¶ 13}** Because Tillman failed to testify at trial, Officer Smith's testimony about what Tillman said is hearsay. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).

**{¶ 14}** The State presented Smith's testimony to prove that McGuire owned the pit bull that attacked Armstrong and Scrappy. This evidence would have been inadmissible unless an exception to the hearsay rule applied. *See* Evid.R.802 and 803. The trial court admitted the evidence under the theory that the officer had talked with the victim just a few moments prior to speaking with Tillman. Although the trial court did not cite a specific exception to the hearsay rule, Evid.R. 803(2) allows hearsay statements to be admitted into evidence if they relate "to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

**{¶ 15}** Assuming for the sake of argument that the hearsay exception does not apply, the issue is whether the admission of the hearsay evidence violated McGuire's Right to Confrontation under the Sixth Amendment of the U.S. Constitution.

**{¶ 16}** In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court of the United states concluded that the Confrontation Clause prevents admission of testimonial hearsay unless the declarant is unavailable and the defendant has had a prior opportunity for cross-examination. *Id.* at 68. "This holding abrogated, in part, the prior rule that the admission of hearsay did not violate the Confrontation Clause if the declarant was unavailable and the statement fell under a 'firmly rooted hearsay exception' or otherwise bore particularized guarantees of trustworthiness." *Horton v. Allen*, 370 F.3d 75, 83 (1st Cir.2004),

citing *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

**{¶ 17}** In *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, the Supreme Court of Ohio noted that "*Crawford* declined to comprehensively define the term 'testimonial' * * *. " *Id.* at ¶ 101. However, the Supreme Court of Ohio further observed that:

> In the consolidated cases of *Davis v. Washington* and *Hammon v. Indiana* (2006), 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224, the United States Supreme Court distinguished between police interrogations that concern an ongoing emergency and those that relate to past criminal conduct. In considering whether the statements in these cases were testimonial, the court formulated the primary-purpose test: "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id*. at ¶ 102, quoting *Davis* at 822.

**{¶ 18}** In *Fry*, the statements in question were made by the victim to police during a domestic violence investigation. Fry subsequently murdered the victim, and the victim's statements were admitted into evidence at Fry's murder trial. *Id*. at ¶ 97-99. The Supreme Court of Ohio concluded that the victim's statements were testimonial, because there was no longer an ongoing emergency at the time she made the statements, and she was no longer in any immediate danger, since Fry had already been removed from the apartment where the domestic

violence had occurred. *Id*. at ¶ 104. Ultimately, the Supreme Court of Ohio concluded that Fry had forfeited his Confrontation Clause rights by killing the victim to prevent her from testifying against him in criminal proceedings. *Id*. at ¶ 105-109.

{¶ 19} Based on *Fry*, we conclude that Tillman's statements were testimonial in nature. At the time the statements were made, no emergency was ongoing, and the primary purpose for questioning Tillman was to establish or prove past events, i.e., the ownership of the dog, that would be of use in a later criminal prosecution.

{¶ 20} Nonetheless, "[i]t is a well-established principle that Confrontation Clause rights, like other constitutional rights, can be waived." (Citations omitted.) *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270, ¶ 14. The Supreme Court of Ohio noted in *Pasqualone* that an attorney can waive the right and that the client's specific assent is not required. *Id*. at ¶ 22. In this regard, the court stressed that:

> [A] lawyer must have "full authority to manage the conduct of the trial. The adversary process could not function effectively if every tactical decision required client approval." *Taylor v. Illinois* (1988), 484 U.S. 400, 418, 108 S.Ct. 646, 98 L.Ed.2d 798. "As to many decisions pertaining to the conduct of the trial, the defendant is 'deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney." ' *Link v. Wabash R. Co.*, 370 U.S. 626, 634, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (quoting *Smith v. Ayer*, 101 U.S. 320, 326, 25 L.Ed. 955 (1880)). Thus, decisions by counsel are generally given effect as to what arguments to pursue, * * * what evidentiary objections to raise, * * * and what agreements to conclude regarding

the admission of evidence * * *. Absent a demonstration of ineffectiveness, counsel's word on such matters is the last." *New York v. Hill* (2000), 528 U.S. 110, 115, 120 S.Ct. 659, 145 L.Ed.2d 560. *Pasqualone* at ¶ 24.

**{¶ 21}** Consistent with this theory of waiver, we have held that "[u]nder the 'opening the door' doctrine, where a party has elicited or introduced prejudicial or inadmissible testimony, his opponent, in the trial court's discretion, may introduce evidence on the same issue in order to rebut any false impression that may have resulted from the earlier admission." *State v. Deleon*, 2d Dist. Montgomery No. 18114, 2001 WL 561298, *8 (May 25, 2001), citing *United States v. Segines*, 17 F.3d 847, 856 (6th Cir.1994).

**{¶ 22}** In the case before us, McGuire's counsel called Officer Smith as his sole witness. The purpose of calling Smith was to elicit testimony which would prove that McGuire did not own the house where the dogs were located and was not responsible for the injury. In order to accomplish this, McGuire's counsel elicited hearsay testimony from Smith about his conversations with Tillman. Although the State objected, the trial court permitted admission of the hearsay statements.

**{¶ 23}** During cross-examination, the State attempted to clarify the testimony by asking Smith about other statements that Tillman had made concerning the dog's ownership and McGuire's presence at the house. This was an appropriate response to defense counsel's trial strategy. Under the circumstances, defense counsel waived McGuire's Right to Confrontation. There has also been no showing that defense counsel was ineffective in pursuing this strategy.

**{¶ 24}** Accordingly, the First Assignment of Error is overruled.

### III.   Was the Conviction Based on Insufficient Evidence?

{¶ 25}   McGuire's Second Assignment of Error states that:

The Judgment of Conviction Against the Defendant-Appellant Should Be Reversed Because It Is Based on Insufficient Evidence as a Matter of Law.

{¶ 26}   Under this assignment of error, McGuire contends that the evidence was insufficient to sustain his conviction because the State failed to prove that he was the person who owned, kept, possessed, harbored, maintained, or had care of the dog at the time of the incident on July 5, 2012.   McGuire further maintains that the State failed to prove that his acts were more than involuntary acts, because there was no evidence that he neglected to leash the dog on the date of the incident.

{¶ 27}   "A sufficiency-of-the-evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law."   *State v. Cherry*, 171 Ohio App.3d 375, 2007-Ohio-2133, 870 N.E.2d 808, ¶ 9 (2d Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387,  678 N.E.2d 541 (1997).   "The proper test to apply to the inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492:  'An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' "   *Cherry* at ¶ 9.

**{¶ 28}** McGuire was convicted of having violated City of Dayton Revised Code of General Ordinances 91.50(A)(5), which provides that "No person owning, keeping, possessing, harboring, maintaining, or having the care, custody, or control of a dog shall suffer or permit such dog to: * * * [b]ite or otherwise cause physical harm to any other person, domestic animal, or feline."

**{¶ 29}** McGuire spends a good part of his brief discussing how the various terms such as "owner," "harborer," and "keeper" are defined. McGuire then argues that there is lack of sufficient evidence because the victim saw McGuire at the house only a few times, and saw others going in and out of the house more frequently.

**{¶ 30}** An owner "is defined as '[o]ne who has the right to possess, use, and convey something.' " *May v. Lubinski*, 9th Dist. Summit No. 26528, 2013-Ohio-2173, ¶ 63, quoting Black's Law Dictionary 1137 (8th Ed.2004). The testimony at trial indicated that McGuire was the owner of the dogs, and thus had the right to posses or use them. This is sufficient for purposes of the ordinance, which does not require anything more. Whether McGuire was at the house on a daily or even weekly basis, he still had the right, as owner, to possess the dogs, and we need not address whether McGuire was also a keeper or harborer. The ordinance does not list these terms conjunctively, and McGuire only had to fit within one of the listed terms.

**{¶ 31}** McGuire's second contention is that the State failed to prove that he suffered or permitted the dog to bite or to cause physical harm to anyone, because there is no proof that he [McGuire] failed to leash the animals on the day of the incident. According to McGuire, the use of the terms "suffer" or "permit" connote some type of affirmative act or omission on the part of the defendant. In this regard, McGuire relies on *City of Bexley v. Selcer*, 129 Ohio App.3d 72,

716 N.E.2d 1220 (10th Dist.1998). In *Selcer*, the ordinance used the word "permit," and also indicated that the "running at large of any such animal in or upon any of the places mentioned in this section is prima-facie evidence that it is running at large in violation of this section." *Id.* at 78, quoting Bexley Codified Ordinances 618.01(d). Under these circumstances, the Tenth District Court of Appeals concluded that the ordinance was not based on strict liability, but required "proof that the owner 'permitted' the dog to go beyond the premises of the owner, i.e., by an intentional or negligent act." (Citation omitted.) *Id*.

{¶ 32} Unlike the ordinance in *Selcer*, City of Dayton Revised Code of General Ordinances 91.50(A)(5) does not mention prima-facie evidence. Furthermore, we have recently considered and rejected the same arguments that McGuire is making. *See State v. Breitenstein*, 2d Dist. Montgomery No. 24325, 2011-Ohio-4450, ¶ 9-13 [interpreting City of Dayton Revised Code of General Ordinances 91.50(A)(5)], and *State v. Smith*, 2d Dist. Montgomery No. 25260, 2013-Ohio-123, ¶ 11-13 [interpreting an ordinance with language identical to Ordinance 91.50(A)(5)].

{¶ 33} Among other things, *Smith* addressed the argument that the State would still have to prove a voluntary act, even though strict liability applies. *Id*. at ¶ 13. This is the same argument that McGuire makes, when he stresses that there is no proof that he was present on the day the incident happened. In this regard, we observed that:

> Even though strict liability applies, Smith asserts in his second argument that the State still was required to prove a voluntary act. This issue was addressed in a concurring opinion in *Breitenstein*. The concurring judge noted that the prosecution always must prove the defendant acted of his own volition.

*Breitenstein* at ¶ 15 (Froelich, J., concurring). That requirement was satisfied here. The evidence established that Smith voluntarily owned and controlled Penny and that he was responsible for securing the dog in his yard. There is no evidence that he was compelled to own and control the dog against his will. *Smith* at ¶ 13, citing *Breitenstein* at ¶ 15.

**{¶ 34}** We see no reason to depart from our prior holdings on this subject. As in *Smith*, the evidence in the case before us indicates that McGuire owned the dog and was responsible for securing him in the yard. The victim, Armstrong, testified that the dog usually had on a leash as well as two weights that kept the dog from running out of the yard. Under the circumstances, and having been on the premises to feed and care for the dog, McGuire would have been aware that the dog could easily escape if not properly confined. Accordingly, " 'after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Cherry,* 171 Ohio App.3d 375, 2007-Ohio-2133, 870 N.E.2d 808, at ¶ 9.

**{¶ 35}** Based on the preceding discussion, McGuire's Second Assignment of Error is overruled.


IV. Conclusion

**{¶ 36}** All of McGuire's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

FAIN, P.J. and HALL, J., concur.

Copies mailed to:

Garrett P. Baker
Alysia A. Goss
James M. Calhoun, II
Hon. John S. Pickrel