[Cite as *State v. Deacey*, 2017-Ohio-8102.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27408 |
| | : | |
| v. | : | Trial Court Case Nos. 2016-CRB-1861 |
| | : | and 2016-TRD-6707 |
| THOMAS J. DEACEY | : | |
| | : | (Criminal Appeal from |
| *Defendant-Appellant* | : | Municipal Court) |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 6th day of October, 2017.

. . . . . . . . . .

JOHN D. EVERETT, Atty. Reg. No. 0069911, City of Kettering Prosecuting Attorney, 2325 Wilmington Pike, Kettering, Ohio 45420
      Attorney for Plaintiff-Appellee

THOMAS J. DEACEY, 1960 Philadelphia Drive, Dayton, Ohio 45406
      Defendant-Appellant-Pro Se

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} This case is before the court on the pro se appeal of Defendant-Appellant, Thomas Deacey, from his convictions and sentences for driving with an expired license in violation of R.C. 4510.12, and failing to stop at a clearly marked stop line in violation of Kettering Codified Ordinances 414.03.

{¶ 2} In support of his appeal, Deacey contends that the trial court erred in several respects, including: allowing the State to amend one charge prior to trial; allowing inadmissible hearsay evidence; denying Deacey's motion to suppress; overruling Deacey's motion to discharge based on delay in trial; overruling Deacey's motion for return of property; and denying Deacey a jury trial.

{¶ 3} After reviewing the record, we conclude that the trial court did not commit any error. Accordingly, the judgment of the trial court will be affirmed.

I.   Facts and Course of Proceedings

{¶ 4} On August 10, 2016, Kettering Police Officer, Brent Wright, was assigned to the road patrol. Wright was wearing a uniform and was driving a marked cruiser. Shortly after midnight, Wright stopped his car at a traffic light on Devon Avenue, where Devon Avenue intersects with Wilmington Pike. Wright noticed that the vehicle in front of him was stopped past the stop bar at the light. When the light turned red, the vehicle turned left onto Wilmington Pike. Wright then initiated a traffic stop and made contact with the driver to advise him of the violation.

{¶ 5} When Wright asked the driver (later identified as Thomas Deacey) for his license, Deacey stated that he did not have it. Wright asked Deacey for his social

security number, but Deacey refused to provide it. Wright then asked Deacey to identify himself, and Deacey responded that he did not have to identify himself because he had not broken any laws. At that point, Wright asked for a second unit to respond to the scene. Wright continually asked Deacey to identify himself, but Deacey refused.

{¶ 6} As a result, Wright placed Deacey under arrest for obstruction and handcuffed him. When Deacey was searched, Wright found a military identification card that listed Deacey's name and date of birth. After processing the name through the computer in his cruiser, Wright learned that Deacey's driver's license was expired. Deacey was then transported to the Kettering City Jail.

{¶ 7} Deacey was subsequently charged in Kettering Municipal Court with the following offenses: obstruction of official business in violation of R.C. 2921.31, a first-degree misdemeanor; driving with an expired license in violation of R.C. 4510.12, a minor misdemeanor; a stop bar violation of Kettering Codified Ordinances 432.17, a minor misdemeanor; and illegal use of license plates in violation of Kettering Codified Ordinances 436.10, a fourth-degree misdemeanor.

{¶ 8} An arraignment was held on August 10, 2016, and was continued at Deacey's request, so he could contact an attorney. At an arraignment held on August 18, 2016, a public defender appeared on Deacey's behalf and filed a plea of not guilty, a time waiver of rights to a speedy trial, and a request for a pretrial. On the same date, Deacey filed many pro se documents, including a motion for summary judgment; a motion for discovery; a motion to dismiss for lack of subject matter jurisdiction (which discussed suppression matters like a warrantless arrest and lack of probable cause for an arrest); and objections based on lack of in personam jurisdiction and defects in the initiation of

the prosecution.

{¶ 9} On August 18, 2016, the trial court filed a notice setting a pretrial for September 7, 2016. On September 7, 2016, Deacey filed several more pro se documents, entitled "notices," which addressed waivers, the right to a speedy trial, and a discharging his appointed counsel. The trial court held a hearing on September 12, 2016, concerning the request to discharge counsel. After fully advising Deacey of his rights, the court discharged Deacey's attorney as counsel.

{¶ 10} On September 14, 2016, the trial court filed a notice setting trial for October 28, 2106. However, the trial did not proceed on that date because of filings that Deacey had made. These included a motion to compel discovery filed on October 17, 2016, a request for a jury trial, and a request for an "in camera" hearing on the motion to compel, filed on October 20, 2016. The court addressed these issues at the October 28, 2016 hearing, and set a jury trial for November 2, 2016.

{¶ 11} Subsequently, on October 31, 2016, Deacey filed a motion to dismiss the case based on lack of a speedy trial and lack of a "fair trial." Deacey also filed a motion to suppress on November 1, 2016. The State filed a motion on the same day, seeking leave to amend the ordinance number for the stop bar violation from 432.17 to 414.03. On November 1, 2016, the trial court set a suppression hearing for December 2, 2016, and a trial date of December 7, 2016.

{¶ 12} At the suppression hearing, the court heard testimony from Officer Wright. Deacey argued the merits of suppression and also argued that the court should dismiss the charge for obstructing official business because Deacey did not affirmatively engage in an act to obstruct official business. At the end of the hearing, the trial court allowed

the State to amend the stop bar violation, and indicated it would issue a decision on the remaining matters.

{¶ 13} On December 6, 2106, the court filed a decision and entry overruling the motion to suppress. In a separate entry filed the same day, the court concluded that Deacey's motion to dismiss the obstruction charge should be granted. The court, therefore, dismissed that charge. In addition, the State filed a motion on December 6, 2016, asking the court to dismiss the charge of driving with illegal plates, and the court signed an entry dismissing this charge. As a result, the only two charges left pending for trial on December 7, 2016, were minor misdemeanors.

{¶ 14} After hearing the evidence at a bench trial, the court found Deacey guilty of the two remaining charges, and sentenced him to a total of $150, plus court costs. The court stayed the sentence pending appeal. Deacey timely appealed from the judgment of conviction and sentence.

II. Did the Trial Court Err in Allowing the State to Amend the Charge?

{¶ 15} Deacey's First Assignment of Error states that:

The Trial Court Erred by Allowing the Amendment of the Initial Charge from Violating K.M.C. 432.17 to K.M.C. 414.03 in direct violation of Criminal Rule 7(D).

{¶ 16} Under this assignment of Error, Deacey contends that the trial court erred in allowing the State to amend the stop bar violation from Kettering Codified Ordinances 432.17 to 414.03. According to Deacey the amendment improperly changed the identity of the charged offense.

**{¶ 17}** The Ohio Traffic Rules do not specifically refer to amendment of tickets, but do provide that the Ohio Rules of Criminal Procedure should be applied if the Traffic Rules fail to prescribe a specific procedure. *Cleveland Hts. v. Perryman*, 8 Ohio App.3d 443, 445, 457 N.E.2d 926 (8th Dist.1983), citing Traf.R. 20. As a result, the procedure for amendment in Ohio Crim.R. 7(D) is the correct provision to apply. *Id. See also State v. Jackson*, 78 Ohio App.3d 479, 482, 605 N.E.2d 426 (2d Dist.1992) (applying Crim.R. 7(D) to amendment of traffic ticket).

**{¶ 18}** Ohio Crim.R. 7(D) states that:

The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged.

**{¶ 19}** The original charged offense was a violation of Kettering Codified Ordinance 432.17, which is entitled "Operation of Vehicle at Stop and Yield Signs". Section 432.17 provides that:

(a) Except when directed to proceed by a law enforcement officer, every driver of a vehicle approaching a stop sign *shall stop at a clearly marked stop line*, but if none, before entering the crosswalk on the near side of the intersection, or if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic before entering it. After having stopped, the driver shall yield the right of way to any vehicle in the intersection or approaching on another roadway so closely as to

constitute an immediate hazard during the time the driver is moving across or within the intersection of junction of roadways.

Emphasis sic.

**{¶ 20}** This charge was amended to a violation of Kettering Codified Ordinances 414.03, which is entitled "Traffic Control Signal, Terms and Lights." This section states, in pertinent part, that:

Whenever traffic is controlled by traffic control signals exhibiting different colored lights, or colored lighted arrows, successively one at a time or in combination, only the colors green, red and yellow shall be used, except for special pedestrian signals carrying a word legend, and such lights shall indicate and apply to drivers of vehicles and pedestrians as follows:

\* \* \*

(c)  <u>Steady Red Indication</u>

(1)  Vehicular traffic facing a steady red signal alone *shall stop at a clearly marked stop line*, but if none, before entering the crosswalk on the near side of the intersection, but if none, then before entering the intersection and shall remain standing until an indication to proceed is shown \* \* \*.

Emphasis sic.

**{¶ 21}** The trial court concluded that the language pertaining to the stop bar violation was the same for both ordinances, and that amendment was appropriate because the change was strictly a matter of inserting the proper ordinance number. Transcript of December 2, 2016 Suppression Hearing, p. 65.

{¶ 22} We review whether amendments change the name or identity of charged offenses de novo, as the decision is a matter of law. (Citation omitted.) *State v. Villamor-Goubeaux*, 2016-Ohio-7420, 72 N.E.3d 1185, ¶ 54 (2d Dist.) In contrast, if amendments do not change the name or identify of charged offenses, we review for abuse of discretion. *Id.*

{¶ 23} "Courts should allow liberal amendment of traffic tickets, in particular, because they are typically prepared by law enforcement officers who lack formal legal training and because they are intended to provide a less formal means for the efficient disposition of traffic offenses." (Citations omitted.) *State v. Campbell*, 150 Ohio App.3d 90, 2002-Ohio-6064, 779 N.E.2d 811, ¶ 6 (1st Dist.). *Accord State v. Pherson*, 2d Dist. Montgomery No. 9180, 1985 WL 9618, *2 (Sept. 20, 1985), citing *Perryman*, 8 Ohio App.3d 443, 457 N.E.2d 926.

{¶ 24} Nonetheless, "[a]n unconsented to amendment of a Uniform Traffic Ticket which changes the name or identity of the offense alleged, being expressly forbidden by Crim.R. 7(D), is reversible error regardless of whether a defendant can demonstrate prejudice as a result of the amendment." *Jackson*, 78 Ohio App.3d at 483, 605 N.E.2d 426, citing *Middletown v. Blevins*, 35 Ohio App.3d 65, 67, 519 N.E.2d 846 (12th Dist.1987).

{¶ 25} After reviewing the record, we conclude that the amendment did not change the name or identity of the offense initially charged under Section 432.17. Although this section and Section 414.03 bear different names, the names are merely general headings, not identifiers of a specific violation. In contrast, the violation listed on Deacey's ticket is "Stop Bar Violation." Under either Section 432.17 or Section 414.03,

the violation is the failure to stop at a clearly marked stop bar. Furthermore, the penalty did not change, as both violations are minor misdemeanors.

{¶ 26} As support for his position that the amendment changed the name and identity of the charged crime, Deacey relies on *Wellston v. Buhl*, 4th Dist. Jackson No. 02CA7, 2003-Ohio-2593. In *Buhl*, the defendant was cited for failure to yield to another vehicle at a stop sign. However, after trial, the court, on its own motion, amended the charge to failure to stop at a red light. This was based on evidence that the defendant ran a red light and struck another car. *Id.* at ¶ 3-12.

{¶ 27} After being found guilty, the defendant appealed, contending that the trial court erred in amending the charge. *Id.* at ¶ 18. The court of appeals held that the amendment had improperly changed the name and identity of the offense, and reversed the conviction. *Id.* at ¶ 21-26. Concerning identity, the court's opinion was based on the fact that each ordinance contained an element the other did not, i.e., under one ordinance, the State was required to prove that the defendant failed to stop at a stop sign, which was not required for a violation of the red-light ordinance. Conversely, to prove a violation of the red-light ordinance, the State had to prove that the defendant failed to stop at a red light. Again, this was not required to establish a violation of the stop sign ordinance. *Id.* at ¶ 23. This is not the situation before us. Under either ordinance, the State was required to prove the same elements.

{¶ 28} As was noted, the court also concluded in *Buhl* that the names of the offenses were different. The court did not give any reason, other than noting that one ordinance was entitled " 'Right-Of-Way At Through Highways; Stop Signs; Yield Signs,' " while the other was entitled " 'Signal Lights.' " *Id.* If that were the court's basis, we

disagree, for the reasons previously mentioned. These are not names of violations, but are only broad headings.

{¶ 29} However, the court's reasoning may be found in its statement that "the amendment of a traffic ticket from a stop sign violation to a stop light violation changes the name and identity of the offense in violation of Crim.R. 7(D)." *Buhl*, 4th Dist. Jackson No. 02CA7, 2003-Ohio-2593, at ¶ 23. If so, this is true. A "stop sign violation" is, in fact, differently named than a "stop light violation." In contrast, the violation involved in the case before us, regardless of the ordinance, was a "stop bar violation," and it was so designated on the ticket.

{¶ 30} Having concluded that the name and identify are not different, we next consider whether the trial court abused its discretion in allowing the amendment. An abuse of discretion occurs when a trial court's attitude is "unreasonable, arbitrary or unconscionable." (Citation omitted.) *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "[M]ost instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* Decisions are unreasonable if they are not supported by a sound reasoning process. *Id.*

{¶ 31} If amendments do not alter the name or identify of offenses, "the defendant is entitled * * * to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made * * *." Crim.R. 7(D).

{¶ 32} Although Deacey may have been entitled to a reasonable continuance, he did not ask for one. We have indicated on various occasions that we will not consider

"entitlement to a continuance under Crim.R. 7(D) when one is not requested." (Citations omitted.) *State v. Jones*, 2015-Ohio-4116, 43 N.E.3d 833, ¶ 130 (2d Dist.)

**{¶ 33}** Furthermore, even if we considered this point, nothing in the record indicates that Deacey was misled or prejudiced. Deacey received a copy of the ticket the night he was arrested; the ticket was also filed with the trial court. In addition, the court allowed the amendment several days before trial, and the facts of the case were not complicated. The only facts Deacey challenged at trial in this regard were whether the stop bar was clearly marked and whether the officer was in a position to see where Deacey's wheels were located. These disputes would have been the same whether Deacey was stopped at either a red light or a stop sign. Accordingly, the trial court did not abuse its discretion in allowing the amendment.

**{¶ 34}** Based on the preceding discussion, the First Assignment of Error is overruled.


### III. Did the Trial Court Err in Admitting Hearsay?

**{¶ 35}** Deacey's Second Assignment of Error is as follows;

> The Trial Court Erred by Allowing Inadmissible Hearsay Evidence to Enter the Record.

**{¶ 36}** Under this assignment of error, Deacey contends that the trial court erred in admitting hearsay evidence because the State failed to procure attendance of the source of the hearsay, and the State's only witness had no first-hand knowledge about preparation of the evidence. Although Deacey does not specifically mention the item to which he objects, his references to the transcript indicate the evidence in question is a

certified copy of Deacey's BMV records.  The records were used in connection with the claim that Deacey's driver's license had expired at the time of his arrest.[1]

{¶ 37} Trial courts have discretion over the admission or exclusion of evidence, and we review the court's decision for abuse of discretion.  *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus; *State v. Long*, 53 Ohio St.2d 91, 98, 372 N.E.2d 804 (1978).  (Citation omitted.)

{¶ 38} R.C. 4501.34(A) provides, in relevant part, that "[a]ll proceedings of the registrar shall be open to the public, and all documents in the registrar's possession are public records.  The registrar shall adopt a seal bearing the inscription: 'Motor Vehicle Registrar of Ohio.'  The seal shall be affixed to all writs and authenticated copies of records, and, when it has been so attached, the copies shall be received in evidence with the same effect as other public records.  All courts shall take judicial notice of the seal."

{¶ 39} "Properly signed and sealed Ohio BMV records are self-authenticating under Evid.R. 902."  (Citations omitted.)  *Cleveland v. Craig*, 8th Dist. Cuyahoga No. 99619, 2013-Ohio-5742, ¶ 36.  *See also Hirsi v. Davis Creek Auto Sales*, 2016-Ohio-7569, 63 N.E.3d 1256, ¶ 53 (10th Dist.) (the "trial court improperly excluded the certified, self-authenticating BMV record of the title history of the car in question.  A certified copy of a government record maintained in the ordinary course of business speaks for itself; no testimony is required from the authenticating agency.")

{¶ 40} State's Ex. A (the BMV record), meets all the requirements under the

---

[1] In addition to providing the certified BMV records, the State elicited evidence from the arresting officer, who testified that he had checked the LEADS system using his cruiser computer and had discovered that Deacey was driving with an expired driver's license. Transcript of December 7, 2016 Trial, pp. 15-17, 25, and 49-50.

statute, bears the official seal of the motor vehicle registrar, and contains the signature of a person designated as a records clerk of the BMV. Accordingly, the trial court did not abuse its discretion in admitting the evidence from the BMV.

{¶ 41} As an additional point, we note that R.C. 4510.12(A)(1) prohibits individuals from driving on public roads without a valid driver's license. In these situations, R.C. 4510.12(B) allows non-certified copies of LEADS records or BMV records to be submitted as prima facie evidence of the fact that an individual did not have a valid driver's license at the time of an alleged violation of R.C. 4510.12(A)(1). Thus, even non-certified copies of records may be admitted.

{¶ 42} R.C. 4510.12(B) further provides that "[t]he person charged with a violation of division (A)(1) or (2) of this section may offer evidence to rebut this prima-facie evidence." Deacey was charged with a violation of R.C. 4510.12, and offered no evidence to rebut the presumption. Consequently, even if the copy of the BMV record had not been certified, it could have been admissible as prima facie evidence, and Deacey would have been required to offer evidence to rebut the presumption. As noted, the records were certified.

{¶ 43} Based on the preceding discussion, Deacey's Second Assignment of Error is overruled.

IV. Did the Trial Court Err in Denying the Motion to Suppress?

{¶ 44} Deacey's Third Assignment of Error states that:

The Trial Court Erred by Denying the Appellant's Motion to Suppress.

{¶ 45} Under this assignment of error, Deacey contends that the trial court erred

in denying his motion to suppress evidence because Officer Wright lacked a reasonable, articulable suspicion to stop Deacey's vehicle. Deacey further contends that the stop was not justified because the alleged violation was minimal. In addition, Deacey maintains that the trial court erred in failing to address the reasonableness of his arrest and the officer's failure to administer *Miranda* warnings following the arrest.

{¶ 46} In overruling the motion to suppress, the trial court concluded that a dispute could exist concerning whether Deacey's car was sufficiently over the line for purposes of a stop bar violation. However, the court found any dispute irrelevant for purposes of the suppression motion, because a police officer's reasonable belief, even if mistaken, justifies traffic stops. The court noted that the interpretation of "at a stop bar" had not been clearly established; thus, any mistake by the officer was reasonable and did not justify exclusion of evidence.

{¶ 47} In its decision, the court further observed that once the car was stopped, Deacey was uncooperative with the police. The court also noted that once Deacey's identify was determined, a license check revealed that he had an expired driver's license and illegal plates, and he was charged with those violations as well as the stop bar violation.

{¶ 48} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." (Citation omitted). *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence."

(Citation omitted.)  *Id.*  "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."  (Citation omitted.)  *Id.*

{¶ 49} Both Article I, Section 14 of the Ohio Constitution and the Fourth Amendment to the United States Constitution prohibit "unreasonable searches and seizures."  *State v. Orr*, 91 Ohio St.3d 389, 391, 745 N.E.2d 1036 (2001).  However, "a traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime."  (Citations omitted.)  *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7. In viewing the propriety of investigative stops, courts consider the " 'totality of the surrounding circumstances.' "  *Id.*, quoting *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus.

{¶ 50} "[A] police officer who lacks probable cause but whose observations lead him reasonably to suspect that a particular person's behavior is criminal may detain the person briefly to investigate the circumstances that provoked the suspicion."  (Citation omitted.)  *Mays* at ¶ 13.

{¶ 51} Recently, the Supreme Court of the United States held that reasonable suspicion justifying a stop includes reasonable factual mistakes as well as reasonable mistakes of law.  *Heien v. North Carolina*, ___ U.S. ___, 135 S.Ct. 530, 540, 190 L.Ed.2d 475 (2014).  This is the case the trial court relied on in overruling the motion to suppress.

{¶ 52} The trial court cited two other cases that differ about where an individual must stop where the ordinance, as here, specifies that a vehicle " 'shall stop at a clearly marked stop line * * *.' "  (Emphasis omitted.)  *State v. Drushal*, 9th Dist. Wayne No.

13CA0028, 2014-Ohio-3088, ¶ 12, quoting Wooster Codified Ordinance 331.19(a), and *State v. Tyson*, 2015-Ohio-3530, 41 N.E.3d 450, ¶ 12 (3d Dist.), quoting R.C. 4511.43(A).

{¶ 53} In *Drushal*, the Ninth District Court of Appeals upheld a trial court's decision to suppress evidence, where the defendant's rear wheels were behind a stop line, and the officer had interpreted the ordinance to mean that vehicles must stop "before" the line. *Drushal* at ¶ 10. The court of appeals found that the ordinance "unambiguously" stated that the vehicle must be stopped "at" the line. Because the dictionary defined "at" as " 'in, on, or near * * *,' " not "before," the court concluded that the officer had "incorrectly understood the legal requirements * * *." *Id.* at ¶ 12.

{¶ 54} In light of these findings, the court held that mistakes of law, unlike mistakes of fact, cannot validate traffic stops, as this would defeat the exclusionary rule's purposes by removing " ' "the incentive for police to make certain that they properly understand the law that they are entrusted to enforce and obey." ' " *Id.* at ¶ 13, quoting *State v. Babcock*, 6th Dist. Wood No. WD-12-025, 2013-Ohio-2366, ¶ 22, which, in turn, quotes *United States v. Lopez–Soto*, 205 F.3d 1101, 1106 (9th Cir.2000).

{¶ 55} In contrast, the Third District Court of Appeals concluded in *Tyson* that the fact "[t]hat stopping *at* a clearly marked stop line is reasonably susceptible to more than one interpretation is demonstrated by the split of courts on the issue." (Emphasis sic; citations omitted.) *Tyson*, 2015-Ohio-3530, 41 N.E.3d 450, at ¶ 18. Due to the ambiguity of the statute [R.C. 4511.43(A)], the court employed general statutory analysis, which considers "the consequences of a particular construction of the statute, the object sought to be obtained by the statute, and the administrative construction of the statute." *Id.* at ¶ 19, citing R.C. 1.49(A), (E), and (F).

**{¶ 56}** The court first found that if vehicles could stop "at" lines by straddling them, the range of stopping points would vary with the length of a particular vehicle. The court stressed that, logically, the General Assembly would not want to establish a range of stopping points. *Id.* at ¶ 21. In addition, the court noted that the object of highway regulation is safety of pedestrians and motorists, and such an interpretation would not further safety. *Id.* at ¶ 22.

**{¶ 57}** Finally, the court reviewed the Ohio Manual of Uniform Traffic Control Devices ("OMUTCD"). This manual indicated that " '[s]top lines should be used to indicate the point *behind* which vehicles are required to stop, in compliance with a traffic control signal.' " (Emphasis sic.) *Id.* at ¶ 23, quoting OMUTCD, Section 3B.16 (2012 Ed.).

**{¶ 58}** In view of these factors, the court concluded that "it is unlawful to stop astride a clearly marked stop line, and that a motorist must stop his or her vehicle prior to the point at which the front-most portion of his or her vehicle will break the plane of the outermost edge of that clearly marked stop line." *Tyson*, 2015-Ohio-3530, 41 N.E.3d 450, at ¶ 24. This led to the further conclusion that the officer had probable cause to stop the vehicle in which the defendant was a passenger. *Id.* at ¶ 25. Based on this conclusion, the court declined to consider whether the officer had a reasonable, articulable suspicion under *Heien*, due to a reasonable mistake of law. *Id.*

**{¶ 59}** At this point, we need not decide between these competing viewpoints. We agree with the trial court that even if Officer Wright incorrectly interpreted the stop bar ordinances, his belief in the interpretation of the ordinance was reasonable. *Heien*, ___ U.S. ___, 135 S.Ct. at 540, 190 L.Ed.2d 475. *See also State v. Johnson*, 2d Dist.

Montgomery No. 27452, 2017-Ohio-7515, ¶ 5, fn. 2.  We also note that *Drushal* was decided before the decision in *Heien*, which rejects the Ninth District's conclusion that mistakes of law cannot validate a traffic stop.  *Drushal*, 9th Dist. Wayne No. 13CA0028, 2014-Ohio-3088, at ¶ 13.  While this would not affect the Ninth District's holding about ambiguity of the stop bar language, *Heien* does not support the court's reasoning about mistakes of law, which was central to its decision on the merits of suppression.

**{¶ 60}** Based on his observation of the traffic violation, Officer Wright's stop of Deacey's vehicle was constitutionally valid.  *Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, at ¶ 8.  After the stop occurred, Officer Wright also had reason to arrest Deacey.  In opposing the arrest, Deacey argues that the stop was made in a private location not open to the public.  He also argues that Officer Wright asked for more information than his name, address, and date of birth, which he was not required to disclose under R.C. 2921.29.  Deacey, therefore, contends that his arrest was unreasonable.

**{¶ 61}** "Probable cause to arrest exists when a reasonably prudent person would believe that the person to be arrested has committed a crime."  (Citation omitted.)  *State v. Adams*, 2d Dist. Montgomery No. 24184, 2011-Ohio-4008, ¶ 7.  "Moreover, probable cause is a concept that must be based on the totality of the circumstances because it ' "deals with probabilities – the factual and practical nontechnical considerations of everyday life on which reasonable and prudent men act." ' "  *State v. Etherington*, 172 Ohio App.3d 756, 2007-Ohio-4097, 876 N.E.2d 1285, ¶ 20 (2d Dist.), quoting *State v. Snyder*, 2d Dist. Montgomery No. 14089, 1994 WL 420918, *2 (Aug. 10, 1994). (Other citation omitted.)

**{¶ 62}** The crime for which Deacey was initially stopped was a minor misdemeanor. R.C. 2935.26(A) provides that officers shall not arrest persons for minor misdemeanors, except in certain limited situations. One such exception occurs where "[t]he offender cannot or will not offer satisfactory evidence of his identity." R.C. 2935.26(A)(2).

**{¶ 63}** The evidence elicited at the suppression hearing indicates that Deacey refused to provide his name, driver's license, or other identifying information despite being repeatedly asked by Officer Wright to do so. Wright also told Deacey that he would be placed under arrest if he failed to identify himself.

**{¶ 64}** " 'The purpose of the identification exception in R.C. 2935.26(A)(2) is not to create a requirement that citizens carry and produce "papers" to prove who they are. Rather, its purpose is to afford the citing officer with a means of reasonably assuring himself or herself that a person charged with a violation of law, but who is allowed to proceed on his way, will likely comply with a citation requiring his later court appearance on the charge. Thus, the person is required to give not only his identity, which is necessary for a citation, but to additionally provide "satisfactory evidence" of his identity to the officer. This implies more than an accused's own representations; it requires some form of corroboration that is reasonably reliable.' " *State v. Brooks*, 2d Dist. Montgomery No. 15523, 1996 WL 491796, *2 (Aug. 30, 1996), quoting *State v. Satterwhite*, 2d Dist. Montgomery No. 14699, 1995 WL 29200 (Jan. 25, 1995).

**{¶ 65}** Because Deacey was not willing to provide any identifying information, Wright was entitled to arrest Deacey. As was noted, Deacey relies on R.C. 2921.29(A), which provides, in pertinent part, that "[n]o person who is in a public place shall refuse to

disclose the person's name, address, or date of birth, when requested by a law enforcement officer who reasonably suspects either of the following: (1) The person is committing, has committed, or is about to commit a criminal offense."

{¶ 66} According to Deacey, he was not required to provide information because he was not in a "public place." This argument is based on the fact that Deacey pulled into the parking lot of a closed business when the traffic stop was initiated.

{¶ 67} Neither R.C. 2921.29 nor R.C. Chapter 2921 defines "public place." In *City of Green v. Rhoades*, 9th Dist. Summit No. 20169, 2001 WL 251351 (March 14, 2001), the court considered the meaning of "public place" for purposes of open container laws. *Id.* at *2. The court commented that there was little caselaw interpreting the meaning of this phrase in connection with open container laws. As a result, the court turned to the extensive body of law defining public places for purposes of the First Amendment. *Id.*

{¶ 68} In this vein, the court noted that "in order for privately owned property to be deemed to be a public place, the public at large must be invited to either enter, remain on and/or cross the property." (Citations omitted.) *Id.* Clearly, if businesses have parking lots, the public is invited to enter, remain on, or cross their property. Deacey, therefore, was in a public place when he was asked to provide information.

{¶ 69} Furthermore, R.C. 2921.29 is not relevant to this case, as Deacey was not charged with having violated that statute. Notably, a violation of R.C. 2921.29 is a fourth-degree misdemeanor. R.C. 2921.29(B).

{¶ 70} As a final matter, Deacey contends that the motion to suppress should have been granted because Officer Wright failed to administer *Miranda* warnings after the arrest. Deacey did not argue anything pertaining to *Miranda* warnings at the suppression

hearing, and the trial court did not consider this matter in its suppression decision. Accordingly, Deacey waived this issue. *See, e.g.*, *State v. Jones*, 8th Dist. Cuyahoga No. 92820, 2009-Ohio-5701, ¶ 46. However, even if we did consider the point, it is irrelevant. The record at the suppression hearing indicates that when Deacey was arrested, he told the officer that he was going to remain silent.

{¶ 71} Moreover any statements Deacey may have made after his arrest were not pertinent to any charges or convictions. After Deacey was arrested, Officer Wright searched him incident to the arrest, and found a military identification card. Wright then used this information to locate Wright's BMV records, which revealed that Wright was driving under an expired license. The only other charges at that point were for a stop bar violation, obstruction of official business, and use of illegal plates. As was noted, the latter two charges were dismissed prior to trial, and Deacey was convicted only of driving with an expired license and the stop bar violation.

{¶ 72} Based on the preceding discussion, the Third Assignment of Error is overruled.


V.   Did the Trial Court Err in Denying the Motion for Discharge?

{¶ 73} Deacey's Fourth Assignment of Error states that:

The Trial Court Erred by Overruling Appellant's Motion to Discharge

for the Delay in Hearing or Trial.

{¶ 74} Under this assignment of error, Deacey contends that his speedy trial rights were violated because he was not tried within 30 days after his arrest. The trial court overruled Deacey's speedy trial motion, finding that Deacey's motion to suppress tolled

the speedy trial time limits.

{¶ 75} The constitutions of Ohio and the United States guarantee the right to a speedy trial. *State v. Adams*, 43 Ohio St.3d 67, 68, 538 N.E.2d 1025 (1989). These constitutional guarantees are incorporated in R.C. 2945.71, Ohio's speedy trial statute, which is strictly construed against the State. *Brecksville v. Cook*, 75 Ohio St.3d 53, 55, 661 N.E.2d 706 (1996).

{¶ 76} Once a defendant establishes a prima facie case that trial was held past the time limits in R.C. 2945.71, the State has the burden of producing evidence that an exception tolling the time limits exists. *State v. Butcher*, 27 Ohio St.3d 28, 30-31, 500 N.E.2d 1368 (1986). *Accord State v. Hardy*, 2d Dist. Greene No. 2012-CA-20, 2012-Ohio-3498, ¶ 16.

{¶ 77} Deacey's original charges included a first-degree misdemeanor, a fourth-degree misdemeanor, and two minor misdemeanors. R.C. 2945.71(A) provides that "a person against whom a charge is pending in a court not of record, or against whom a charge of minor misdemeanor is pending in a court of record, shall be brought to trial within thirty days after the person's arrest or the service of summons." Fourth-degree misdemeanors allow 45 days, and first-degree misdemeanors allow 90 days for bringing a defendant to trial. R.C. 2945.71(B)(1) and (2). Each day a defendant is in jail on the pending charges is counted as three days. R.C. 2945.71(E).

{¶ 78} R.C. 2945.71(D) further provides that:

A person against whom one or more charges of different degrees, whether felonies, misdemeanors, or combinations of felonies and misdemeanors, all of which arose out of the same act or transaction, are

pending shall be brought to trial on all of the charges within the time period required for the highest degree of offense charged, as determined under divisions (A), (B), and (C) of this section.

**{¶ 79}** Accordingly, based on Deacey's original charges, the State was required to bring him to trial within 90 days. Deacey was arrested on August 10, 2016 and was tried on December 7, 2016. The trial occurred 119 days after the arrest (excluding the first day); on its face, this period exceeded the 90 days allotted.

**{¶ 80}** Deacey served one day in jail, which counts as three days. R.C. 2945.71(E). At the arraignment held on August 10, 2016, the case was continued until August 18, 2016, so that Deacey could contact an attorney. This time is not charged against the State. *See* R.C. 2945.72(C) (extension of speedy trial time is allowed for delay caused by an accused's lack of counsel).

**{¶ 81}** After counsel was appointed on August 18, 2016, he filed a waiver of Deacey's speedy trial rights the same day. *See* Doc. #11. "To be effective, an accused's waiver of his or her constitutional and statutory rights to a speedy trial must be expressed in writing or made in open court on the record." *State v. King*, 70 Ohio St.3d 158, 637 N.E.2d 903 (1994), syllabus. *Accord State v. Ramey*, 132 Ohio St.3d 309, 2012-Ohio-2904, 971 N.E.2d 937, ¶ 18. The Supreme Court of Ohio has also held that "a defendant's statutory right to a speedy trial may be waived, with or without the defendant's consent, by the defendant's counsel." *King* at 160, citing *State v. McBreen*, 54 Ohio St.2d 315, 376 N.E.2d 593 (1978), syllabus. *Accord State v. Pittman*, 2d Dist. Montgomery No. 25167, 2013-Ohio-962, ¶ 6, fn.3 (noting that counsel may waive client's right to speedy trial even where a client is not aware and has not been informed of the

waiver).

{¶ 82} On August 18, 2016, the trial court set a pretrial hearing for September 7, 2016. On September 7, 2016, Deacey filed a pro se notice requesting a speedy trial, and a pro se request to discharge his counsel. Assuming for purposes of argument that Deacey's agreement to a speedy trial waiver was withdrawn at this point, the days between August 18 and September 7, 2016, may not be charged to the State, since Deacey's counsel filed a written waiver of speedy trial rights.

{¶ 83} The Supreme Court of Ohio has also held that "[t]he [speedy trial] statute may be tolled whether or not a waiver has been executed." *State v. Blackburn*, 118 Ohio St.3d 163, 2008-Ohio-1823, 887 N.E.2d 319, ¶ 18. Thus, after Deacey withdrew his assent to speedy trial, the issue is whether additional tolling prevents his discharge on speedy trial grounds.

{¶ 84} On September 7, 2016, the trial continued the matter until September 12, 2016, at Deacey's request, to allow Deacey time to decide if he wanted to waive his right to counsel and represent himself. *See* Transcript of September 12, 2016 Hearing, p. 6, and September 13, 2016 Entry and Order Discharging Counsel at Defendant's Request, Doc. #20, p. 1. The period between September 7 and September 12, 2016 is not chargeable to the State. *See* R.C. 2945.72(E) (allowing time to be extended based on delay caused by an accused's motions or actions).

{¶ 85} At the September 12, 2016 hearing, the trial court granted Deacey's request to discharge his counsel. The court then set a trial date of October 28, 2016. On September 26, 2016, the State filed a motion to compel reciprocal discovery from Deacey, and the trial court granted the motion on September 27, 2016, requiring Deacey to provide

all discovery to the State by October 14, 2016. Deacey did not respond to the State's request until October 18, 2016, however.

{¶ 86} "[A] defendant's failure to respond within a reasonable time to a prosecution request for reciprocal discovery constitutes neglect that tolls the running of speedy-trial time pursuant to R.C. 2945.72(D)." *State v. Palmer*, 112 Ohio St.3d 457, 2007-Ohio-374, 860 N.E.2d 1011, ¶ 24. The trial court did not make a finding on this point, and we will assume for purposes of argument that the delay from September 27 to October 14, 2016, was reasonable.

{¶ 87} At this point, 32 days had elapsed since September 12, 2016. When this time is added to the three days for the jail term, 35 days toward the 90-day speedy trial clock had elapsed. The time Deacey took to respond between October 14 and October 18 was not reasonable, because Deacey did not comply with the trial court's request and did not provide any explanation for failing to timely respond. As a result, this time is not chargeable to the State. *See* R.C. 2945.72(D) (allowing extension of speedy trial time for accused's "neglect or improper act").

{¶ 88} On October 17 and 18, Deacey filed various motions requesting discovery from the State (even though he had already been given discovery), and also requested an "in camera hearing." Deacey filed additional motions on October 20, 2016, including a motion for a jury trial.

{¶ 89} The trial court addressed these motions at a hearing held on October 28, 2017, which had been the date scheduled for trial. At that time, the court noted that it would grant the motion for jury trial, even though Deacey failed to properly caption the motion and had not served it on the State. The court then set a jury trial for November

2, 2016. The court also overruled Deacey's motion for discovery, as the State had already provided the requested discovery. However, the court did say that it would give Deacey a copy of the complaint and traffic ticket, because Deacey had apparently lost these items.

**{¶ 90}** The time between October 18 and October 28, 2016 was not chargeable to the State, because Deacey filed various motions and the court was permitted to take a reasonable amount of time to resolve the motions. *See, e.g.*, R.C. 2945.72(E) (allowing tolling based on motions filed by defendants); *State v. Martin*, 56 Ohio St.2d 289, 296-297, 384 N.E.2d 239 (1978) (trial courts are to rule expeditiously as possible on defense motions in order to comply with speedy trial requirements, but courts also have reasonable time to decide motions). In *Martin*, the court found that the 22 days the trial court spent in ruling on a defense motion was permissible and was properly charged to the defendant. *Id.* at 297-298. *See also State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, 781 N.E.2d 159, ¶ 22 ["discovery requests are tolling events pursuant to R.C. 2945.72(E)"].

**{¶ 91}** Subsequently, on October 31, 2016, Deacey filed a motion to dismiss for want of a speedy trial. Again, this defense motion tolled the speedy trial time limit.

**{¶ 92}** We have said that "[t]he merits of a motion for discharge for a violation of speedy trial rights made pursuant to R.C. 2945.73 are determined as of the date the motion is filed, not when it is decided or when, after a denial, a defendant is brought to trial." (Citation omitted.) *State v. Ferguson*, 2d Dist. Clark No. 08CA0050, 2011-Ohio-4285, ¶ 55. Adding the two days between October 28 and October 31 (October 29 and 30), to the 35 days that had previously elapsed results in 37 days total that could be

counted against the 90-day speedy trial time period. Consequently, the speedy trial time had not elapsed at this point, and Deacey's motion would have been properly denied.

**{¶ 93}** The trial court did not make a decision on the speedy trial motion at the time, but did overrule Deacey's speedy trial motion when he renewed it the day of trial. Transcript of December 7, 2016 Trial, p. 5.[2] In any event, Deacey filed a motion to suppress on November 1, 2016. In response, the court set a suppression hearing for December 2, 2016, and set a jury trial date of December 7, 2016. Assuming for purposes of argument that the speedy trial motion filed on October 31, 2016, did not begin a tolling period, the suppression motion did begin tolling the speedy trial time. R.C. 2945.71(E) (tolling due to defense motions); *State v. Williams*, 2d Dist. Montgomery No. 20104, 2004-Ohio-5273, ¶ 14.

**{¶ 94}** The court held a suppression hearing on December 2, 2016, and overruled the motion to suppress on December 6, 2016. The days between November 1, 2016, and December 6, 2016, cannot be charged to the State. *Williams* at ¶ 14. Accordingly, when trial began on December 7, 2016, a maximum of 38 days (if one includes December 7), or a maximum of 39 days (if one includes October 31 and December 7) had elapsed.

**{¶ 95}** At trial, Deacey argued that 92 days had elapsed, but the trial court disagreed, noting that the suppression motion had tolled time until the day the motion to suppress was decided. Deacey now contends that because the two charges requiring a 90-day period were dismissed prior to trial, the 30-day period for the minor misdemeanors should apply. We disagree.

---

[2] At the September 12, 2016 hearing, the trial court had overruled Deacey's motion for speedy trial, noting that it was premature. Transcript of September 12, 2016 Hearing, p. 12. Deacey raised the issue again in the motion filed on October 31, 2016, and at trial.

{¶ 96} As noted above, R.C. 2945.71(D) provides that where one or more charges that arise from the same transaction are brought to trial, the speedy time limits for the highest degree of offense charged applies. The fact that the charges were dismissed the day before trial does not create entitlement to application of the lower time period. *See State v. Gasnik*, 132 Ohio App.3d 612, 614, 725 N.E.2d 1162 (1st Dist.1998). *See also City of Dayton v. Connor*, 2d Dist. Montgomery No. 9157, 1986 WL 4610, *3 (April 18, 1986) (rejecting defendant's speedy trial argument where a greater degree misdemeanor was reduced to a minor misdemeanor, and reasoning that "the reduction to the lesser offense took place during trial within the time permitted for the greater offense, and having been accepted by the appellant, by the parties and the court, the situation was the same as if the reduction was made under a Cr.Rule 29(A) motion").

{¶ 97} *Gasnik* involved a situation similar to the present. In that case, the State initially charged the defendant with two fourth-degree misdemeanors and two minor misdemeanors. *Id.* at 613. Subsequently, the State amended the fourth-degree misdemeanor charges to minor misdemeanors. *Id.* On appeal, the defendant argued that the lower (30-day) time limit for the minor misdemeanors should apply, and that he should be discharged because 32 days had elapsed from the time charges were filed and when he was brought to trial. *Id.*

{¶ 98} The First District Court of Appeals disagreed, and concluded, after reviewing the case law, that "[w]hen an original charge is reduced to a lesser charge that carries a shorter speedy-trial time limit, the speedy-trial deadline will be the *earlier* of (1) the speedy-trial deadline for the original charge, applied from the date of the original charge, or (2) the speedy-trial deadline for the lesser charge, applied from the date that

the original charge was reduced to the lesser charge." (Citations omitted; emphasis sic.) *Id.* The same reasoning would apply where the original charges are dismissed and the State proceeds on the remaining charges. As was noted in *Connor*, this situation is akin to having the trial proceed, but with the greater charges being dismissed during trial, either at the State's option or in response to a motion for acquittal.

{¶ 99} Under this reasoning, if the deadline for the original charge was used, the speedy trial time of 90 days had not yet elapsed by December 6, 2016. If one uses the 30-day time limit from the date the original charges were dismissed (December 6, 2016), only one day had elapsed at the time of trial. In this regard, we note that the trial court dismissed the charge carrying the 90-day time limit the day before trial. The State could not have anticipated this, making it quite similar to a dismissal after trial began.

{¶ 100} Other courts have held that "[w]hen an original charge is later reduced to a lesser offense based upon the same conduct, the speedy trial limitations of R.C. 2945.71 begin to run anew on the date the defendant is served with the charge on the lesser offense. * * * However, the statutory time requirement for the new, lesser charge may not exceed the statutory period for trial of the original, more serious charge." *State v. Smith*, 4th Dist. Athens No. 99CA31, 2000 WL 41723, *2 (January 12, 2000).

{¶ 101} As a final matter, we note that Deacey filed various motions on August 18, 2016, including a motion to dismiss for lack of subject matter jurisdiction, which discussed suppression matters like a warrantless arrest and lack of probable cause for an arrest. This could easily be construed as a motion to suppress, which would have tolled the time limits from August 18, 2016 until December 6, 2018, when the trial court decided the motion to suppress. Under this theory, only three days would have elapsed for speedy

trial purposes.

{¶ 102} Because Deacey was brought to trial within appropriate time limits under R.C. 2945.71, the Fourth Assignment of Error is overruled.

VI.   Did the Trial Court Err in Overruling the Motion for Return of Property?

{¶ 103} Deacey's Fifth Assignment of Error states as follows:

The Trial Court Erred When It Overruled Appellant's Motion for the Return of Property.

{¶ 104} Under this assignment of error, Deacey contends that the trial court erred when it overruled his motion for return of property.   The motion was filed the day of trial, and was overruled by the trial court, which stated that the motion failed to even specify the property to which Deacey referred.   According to Deacey, the trial court improperly overruled the motion because the State failed to file a charging instrument containing a forfeiture specification.

{¶ 105} R.C. 2981.02 allows certain property to be forfeited to the State or to political subdivisions under the criminal or delinquency process in R.C. 2981.04 or pursuant to the civil process outlined in R.C. 2981.05.   Where the State seeks to seize property, the prosecutor must "file a motion in the appropriate court to request a hearing before the seizure and shall notify the property owner of the motion.   The court shall hold the hearing not sooner than twenty-one days after the motion is filed.   At the hearing, the court shall grant the motion if the state or political subdivision demonstrates by a preponderance of the evidence that the real property is subject to forfeiture."   R.C. 2981.03(A)(3).

{¶ 106} Since this is a criminal case, the procedures in R.C. 2981.04 would apply. Under R.C. 2981.04(A)(1), property may be forfeited only if:

[T]he complaint, indictment, or information charging the offense or municipal violation, or the complaint charging the delinquent act, contains a specification of the type described in section 2941.1417 of the Revised Code that sets forth all of the following to the extent it is reasonably known at the time of the filing:

(a) The nature and extent of the alleged offender's or delinquent child's interest in the property;

(b) A description of the property;

(c) If the property is alleged to be an instrumentality, the alleged use or intended use of the property in the commission or facilitation of the offense.

{¶ 107} Where property is not reasonably foreseen as subject to forfeiture when an indictment, information, or complaint is filed, R.C. 2981.04(A)(2) allows a trier of fact to order a forfeiture verdict "if the prosecutor, upon discovering the property to be subject to forfeiture, gave prompt notice of this fact to the alleged offender * * * under Crim.R. 7(E) * * *."

{¶ 108} In the case before us, the complaint and the ticket do not contain any specifications evidencing an intent to seize property. Furthermore, the trial judge did not order that any property belonging to Deacey be forfeited. Accordingly, we see no error in the trial court's decision to overrule Deacey's motion, which, in fact, was devoid of any indication of the property to which Deacey was referring.

{¶ 109} Furthermore, the Supreme Court of Ohio has indicated that "the forfeiture of items contemplates judicial action and additional considerations that extend beyond a defendant's criminal case. The proceeding itself requires an additional finding by the trier of fact. R.C. 2981.04(B). Issues concerning the defendant's interest and the ability to seize the property also must be considered. R.C. 2981.06. And these determinations may be made by the trier of fact after the court finds the defendant guilty of the offense. R.C. 2981.04(B)." *State v. Harris*, 132 Ohio St.3d 318, 2012-Ohio-1908, 972 N.E.2d 509, ¶ 33. As a result, the court concluded in *Harris* that "a journal entry of conviction need not include a nonmandatory, related forfeiture in order to be a final, appealable order pursuant to Crim.R. 32(C)." *Id.* at ¶ 35.

{¶ 110} The point here is that even if forfeiture had been involved (which it was not), the court's judgment of conviction and sentence was a final appealable order. Deacey timely appealed the judgment, and that is the only matter before us.

{¶ 111} Based on the preceding discussion, the Fifth Assignment of Error is overruled.

## VII. Did the Trial Court Err by Failing to Allow a Jury Trial?

{¶ 112} Deacey's Sixth Assignment of Error states as follows:

The Trial Court Erred by Denying the Constitutionally Protected Right of the Accused to a Trial by an Impartial Jury of the County in Which the Offense Was Alleged to Have Been Committed.

{¶ 113} Under this assignment of error, Deacey contends that the trial court erred in refusing to allow him to have a jury trial. Deacey's reasoning is based on the statement

in Article I, Section 5 of the Ohio Constitution that "[t]he right of trial by jury is inviolate," the fact that minor misdemeanors are classified as crimes under R.C. 2901.02, and the fact that R.C. 2945.17(B) guarantees the right to a jury trial in "any trial."`

{¶ 114} R.C. 2945.17(A) does state that "[a]t any trial, in any court, for the violation of any statute of this state, or of any ordinance of any municipal corporation, except as provided in divisions (B) and (C) of this section, the accused has the right to be tried by a jury." As the statute indicates, this right is qualified by R.C. 2945.17(B), which provides that "[t]he right to be tried by a jury that is granted under division (A) of this section does not apply to a violation of a statute or ordinance that is any of the following: (1) A violation that is a minor misdemeanor * * *."

{¶ 115} Courts in Ohio have held that "the right to trial essentially follows the degree of offense and that once an offense had been lawfully amended to a minor misdemeanor, no right to a jury trial existed." (Citation omitted.) *Gates Mills v. Welsh*, 146 Ohio App.3d 368, 372, 766 N.E.2d 204 (8th Dist.2001). *See also Grove City v. Ricker*, 10th Dist. Franklin No. 13AP-766, 2014-Ohio-1808, ¶ 8; *Beavercreek v. Ride*, 2d Dist. Greene No. 06-CA-0082, 2007-Ohio-6898, ¶ 38 (noting that since "the charge was amended to a minor misdemeanor * * * no jury trial was available nor conducted").

{¶ 116} Again, the same reasoning applies where charges warranting a jury trial have been dismissed prior to trial. *See State v. Coyle*, 14 Ohio App.3d 185, 470 N.E.2d 457 (9th Dist.1984), paragraph one of the syllabus (holding that "[w]here the accused is charged with two offenses, only one of which is accompanied by a right to a jury trial, and that particular charge is subsequently nolled following a request by the accused for a jury trial, the defendant's right to a jury trial is thereby extinguished * * * ").

{¶ 117} Although Deacey was originally charged with offenses that would permit a jury trial, those charges were dismissed before trial, and the only offenses left remaining were minor misdemeanors.   Deacey, therefore, had no right to a jury trial.   Accordingly, the Sixth Assignment of Error is overruled.

VIII.   Conclusion

{¶ 118} All of Deacey's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

DONOVAN, J., concurs.

FROELICH, J., dissenting in part and concurring in part:

{¶ 119} I would find that the court erred when it amended the charge from failing to stop at the stop line when approaching a stop sign (R.C.O. 432.17, entitled "Operation of Vehicle at Stop and Yield Signs") to failing to stop at the stop line when facing a steady red signal (R.C.O. 414.03, entitled "Traffic Control Signal, Terms and Lights").

{¶ 120} As discussed by the majority, in *Wellston v. Buhl*, the Appellant was charged with failure to stop at a stop sign, but was convicted of failure to stop at a red light after the trial court permitted an amendment.

{¶ 121} The ticket indicated that the driver "failed to yield to a vehicle already in the intersection" and cited to the city ordinance which "requires drivers to stop at stop signs and yield to other vehicles already in the intersection before proceeding."

{¶ 122} At trial, the evidence established that there were no stop signs at the

intersection where the collision occurred, but that the driver ran a red light. The defendant moved for an acquittal under Crim.R. 29(A) because there was no stop sign. The motion was denied and the witnesses, including the defendant, testified. After summations, the trial court on its own motion, pursuant to Crim.R. 7, amended the charge to failure to yield at a red light. Appellant objected and moved for a continuance, but conceded that the testimony would be the same if there were another trial.

{¶ 123} While recognizing "the wisdom in 'liberally' permitting the amendment of a traffic ticket," *Wellston* at ¶ 20 (internal citation omitted), the appellate court found the amendment did change the name of the offense (from "Right of Way at Through Highways; Stop Signs; Yield Signs" to "Signal Lights") and that since each offense contained an element that the other does not (stop sign vs. stop light), the amendment also changed the identity of the offense charged.

{¶ 124} In *State v. Gilleland*, 2d Dist., Champaign No. 2004-CA-1, 2005-Ohio-659, the defendant was charged with DUI and a "driving left of the center line" under R.C. 4511.29. At the close of the State's case, the court granted the State's request to amend the minor misdemeanor to a marked lanes violation under R.C. 4511.33.

{¶ 125} R.C. 4511.29 prohibits driving left of the center lane in overtaking and passing traffic unless it can be done without interfering with the safe operation of traffic overtaken or approaching from other directions. R.C. 4511.33 requires a vehicle be driven in one lane and not move from such lane until the driver ascertains that such movement can be made safely.

{¶ 126} We held that the "name and identity of the offense in the initial citation is not the same as the name and identity of the offense" of which the defendant was

convicted, and the amendment was "reversible error regardless of whether a defendant can demonstrate prejudice as a result of the amendment." *Gilleland* at ¶s 14 and 15. S*ee also State v. Mitchell*, 2d Dist. Montgomery No. 25976, 2014-Ohio-5070, ¶ 19.

**{¶ 127}** I agree with the majority that the Appellant was not prejudiced and that the "essence" of the offense is not stopping at a stop bar.   Nonetheless, the two ordinances each requires an element the other does not.

**{¶ 128}** In all the other respects, I concur with the majority and would affirm the conviction for driving with an expired license.

. . . . . . . . . . . .

Copies mailed to:

John D. Everett
Thomas J. Deacey
Hon. Frederick W. Dressel